UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| LIONEL L.L.C., et al., | : | Case No. 04-17324 (BRL) |
| | | (Jointly Administered) |
| Debtors. | : | |

-------------------------------------------------- x

| | | |
|---|---|---|
| MIKE'S TRAIN HOUSE, INC., | : | 07 Civ. 7946 (RMB) |
| | | (Bankruptcy Appeal) |
| Appellant, | : | |
| -against- | : | |
| LIONEL L.L.C. and LIONTECH | : | |
| COMPANY, Debtors and Debtors in | | |
| Possession, and OFFICIAL COMMITTEE | : | |
| OF UNSECURED CREDITORS OF | | |
| LIONEL L.L.C., | : | |
| Appellees. | : | |

-------------------------------------------------- x

## BRIEF FOR APPELLANT
## MIKE'S TRAIN HOUSE, INC.

Robert A. Swift[*]
Robert J. LaRocca[*]
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, Pennsylvania 19107
Telephone    (215) 238-1700
Facsimile    (215) 238-1968

Alec P. Ostrow (AO-3104)
STEVENS & LEE, P.C.
485 Madison Avenue
New York, New York 10022
Telephone    (212) 319-8500
Facsimile    (212) 319-8505

Dated:  September 20, 2007

[*] Motion for admission pro hac vice pending.

35862_7

# TABLE OF CONTENTS

**Page**

STATEMENT OF APPELLATE JURISDICTION ....................................................... 1

STATEMENT OF ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW ...... 2

STATEMENT OF THE CASE............................................................................. 3

      A.     Description of the Trade Secret Case................................................ 5

      B.     The Trade Secret Trial in Federal Court, and Appeal............................ 6

      C.     Lionel's Bankruptcy................................................................ 7

      D.     The Bankruptcy Court *Sua Sponte* Proposes Estimation ..................... 9

      E.     Lionel's Obstruction of Conference Call with Judge O'Meara ............... 9

      F.     Comparison of Estimation and Retrial Procedures................................ 10

      G.     Comparison of Time ................................................................ 11

      H.     MTH's Proof of Claim.............................................................. 12

      I.     Lionel's Representations To the Sixth Circuit................................... 13

      J.     The Federal Court Injunction...................................................... 13

      K.     The Real Beneficiaries of the Estimation ........................................ 13

      L.     Exclusivity ........................................................................... 14

ARGUMENT ............................................................................................. 16

POINT I
THE COURT BELOW ERRED IN DENYING THE MOTION
TO PERMIT RETRIAL, AND IN ORDERING ESTIMATION.................................... 16

      A.     The Court Erred In Finding "Undue Delay" In A Federal Retrial........... 17

      B.     Lionel is Barred from "Estimation" by Judicial Estoppel .................... 21

            (1)     Representations About Constitutional Right to Jury Retrial................... 22

            (2)     Representations About Lionel's Prospering in Bankruptcy..................... 24

             (3)     Representations That The Forum Selection Clause Requires Trial in Michigan ............................................................................... 27

i

(4)    Representations That Theft of Trade Secrets Involves Irreparable Harm  30

C.    An "Estimation" Proceeding Cannot Enter a Permanent Injunction ................... 31

D.    The Estimation Power Should Not Be Construed to Permit a Solvent Debtor To Strip MTH of the Constitutional Rights MTH Exercised Prior to Lionel's Bankruptcy ......................................................................................................... 33

E.    The Court Below Erred By Not Addressing the Legal Requirements for Lifting the Automatic Stay ............................................................................................. 38

POINT II
THE COURT ERRED IN EXTENDING EXCLUSIVITY TO LIONEL.................................. 44

POINT III
THE COURT BELOW ERRED IN EXTINGUISHING MTH'S CLAIM FOR ATTORNEYS' FEES ............................................................................................................................. 46

CONCLUSION.................................................................................................................. 47

| Exhibit A | Opinion and Order of Court Below, August 3, 2007 |
| Exhibit B | Stipulation to lift automatic stay in court below, December 2, 2004 |
| Exhibit C | Median time for appeal in Sixth Circuit from Administrative Office website |
| Exhibit D | Median time for bankruptcy appeal in Second Circuit from Administrative Office website |
| Exhibit E | Permanent injunction entered in United States District Court, Eastern District of Michigan, November 1, 2004 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*80 Nassau Associates v. Crossland Federal Sav. Bank (In re 80 Nassau Associates)*,
  169 B.R. 832 (Bankr. S.D.N.Y. 1994) ............................................................... 43

*ACC Bondholder Group v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)*,
  364 B.R. 84 (S.D.N.Y. 2007) .......................................................................... 24

*AXA Marine & Aviation Insurance (UK) Ltd. v. Seajet Industrial Inc.*,
  84 F.3d 622 (2d Cir. 1996) ............................................................................. 27

*In re Adelphia Communications Corp.*,
  342 B.R. 122 (S.D.N.Y. 2006) ........................................................................... 2

*In re Adler, Coleman Clearing Corp.*,
  277 B.R. 520 (Bankr. S.D.N.Y. 2002) ............................................................... 43

*Aetna Insurance Co. v. Kennedy*,
  301 U.S. 389 (1937) ....................................................................................... 37

*In re Baldwin United Corp.*,
  55 B.R. 885 (Bankr. S.D. Ohio 1985) ............................................................... 20

*Bank of America National Trust & Sav. Association v. 203 N. LaSalle St. Partnership*,
  526 U.S. 434 (1999) ....................................................................................... 38

*Beacon Theatres, Inc. v. Westover*,
  359 U.S. 500 (1959) ....................................................................................... 37

*In re Ben Cooper, Inc.*,
  896 F.2d 1394 (2d Cir. 1990), vacated to consider jurisdiction,
  498 U.S. 964 (1990) ................................................................................. 34, 35

*In re Ben Cooper, Inc.*,
  924 F.2d 36 (2d Cir. 1991), *cert. den.*, 500 U.S. 928 (1991) ............................... 35

*Bernstein v. IDT Corp.*,
  78 B.R. 275 (S.D.N.Y. 1987) ........................................................................... 39

*Bethlehem Steel Corp. v. BP Energy Co. (In re Bethlehem Steel Corp.)*,
  291 B.R. 260 (Bankr. S.D.N.Y. 2003) ............................................................... 27

iii

*Bittner v. Borne Chemical, Inc.*,
    691 F.2d 134 (3d Cir. 1982)............................................................................17

*Blan v. Nachogdoches (In re Blan)*,
    237 B.R. 737 (8th Cir. B.A.P. 1999)..............................................................44

*Bohack Corp. v. Borden, Inc.*, ,
    599 F.2d 1160 (2d Cir. 1979)..........................................................................39

*Brady v. United States*,
    397 U.S. 742 (1970).........................................................................................37

*In re Briarpatch Film Corp.*,
    281 B.R. 820 (Bankr. S.D.N.Y. 2002)...........................................................39

*Burger Boys, Inc. v. South St. Seaport Ltd. Partnership (In re Burger Boys, Inc.)*,
    183 B.R. 682 (S.D.N.Y. 1994)........................................................................42

*In re Chateaugay Corp.*,
    944 F.2d 997 (2d Cir. 1991)............................................................................17

*Crown Heights Jewish Community Council, Inc. v. Fischer (In re Fischer)*,
    202 B.R. 341 (E.D.N.Y. 1996) .......................................................................41

*In re Dow Corning Corp.*,
    211 B.R. 545 (Bankr. E.D. Mich. 1997)........................................................18

*FDIC v. Niagra Mohawk Power Corp. (In re Megan-Racine Associates)*,
    102 F.3d 671 (2d Cir.1996)...............................................................................1

*FMC Corporation v. Taiwan Tainan Giant Industrial Co., Ltd.*,
    730 F.2d 61 (2d Cir. 1984)..............................................................................30

*First Fidelity Bank v. Hooker Investments, Inc. (In re Hooker Investments, Inc.)*,
    937 F.2d 833 (2d Cir. 1991)............................................................................36

*Fuentes v. Shevin*,
    407 U.S. 67 (1972)...........................................................................................37

*Gargoyle v. Delsole*,
    769 F.2d 77 (2d Cir. 1985)..............................................................................38

*In re General Bearing Corp.*,
    136 B.R. 361 (Bankr. S.D.N.Y. 1992)...........................................................44

*Granfinanciera, S.A. v. Nordberg*,

492 U.S. 33 (1989)..................................................................................................34, 35

*In re Granite Partners, L.P.*,
210 B.R. 508 (Bankr. S.D.N.Y. 1997)...........................................................43

*Hepburn ex rel. Hepburn v. Athelas Institute, Inc.*,
324 F. Supp. 2d 752 (D. Md. 2004)...............................................................28

*Holtkamp v. Littlefield (In re Holtkamp)*,
669 F.2d 505 (7th Cir. 1982) ...................................................................41, 44

*International Bus. Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage
& Van Co.)*,
938 F.2d 731 (7th Cir. 1991) ........................................................................41

*Lamar Advertising of Penn LLC v. Town of Orchard Park, NY*,
356 F.3d 365 (2d Cir. 2004)............................................................................1

*Langenkamp v. Culp*,
498 U.S. 42 (1990)........................................................................................35

*In re Laventhol & Horwath*,
139 B.R. 109 (S.D.N.Y. 1992).................................................................41, 42

*In re Lionel L.L.C.*,
2007 WL 2261539 (Bankr. S.D.N.Y. Aug. 3, 2007) .......................................1

*Litton System, Inc. v. Frigitemp Corp. (In re Frigitemp Corp.)*,
8 B.R. 284 (S.D.N.Y. 1981)..........................................................................44

*Maxwell Communications Corp. v. Societe Generale (In re Maxwell Communications
Corp.)*,
93 F.3d 1036 (2d Cir. 1996)....................................................................24, 25

*Mazzeo v. Lenhart (In re Mazzeo)*,
167 F.3d 139 (2d Cir. 1999)..........................................................................40

*Mazzeo v. United States (In re Mazzeo)*,
131 F.3d 295 (2d Cir. 1997)..........................................................................17

*In re McClean Industrial, Inc.*,
87 B.R. 830 (Bankr. S.D.N.Y. 1987).............................................................44

*In re McCrory Corp. v. 99 Centrals Only Stores*,
160 B.R. 502 (S.D.N.Y. 1993).......................................................................21

*Midland Cogeneration Venture Ltd. Partnership v. Enron Corp. (In re Enron Corp.),*
  419 F.3d 115 (2d Cir. 2005)...............................................................................................36

*Mike's Train House, Inc. v. Lionel, L.L.C.,*
  472 F.3d 398 (6th Cir. 2006) ..............................................................3, 7, 13, 28, 31, 33

*Mike's Train House v. Lionel LLC, et al*
  2:00-cv-71729-JCO (E.D. Mich.) .........................................................................................6

*MTH v. Korea Brass Company, Limited et al.,*
  5:06-cv-10375-JCO-DAS (E.D. Mich.)...............................................................................10

*Mulvaney Mechanical, Inc. v. Sheet Metal Workers International Association, Local 38,*
  288 F.3d 491 (2d Cir. 2002)..........................................................................................22, 26

*NLRB v. Bildisco,*
  465 U.S. 513 (1985).............................................................................................................36

*New Hampshire v. Maine,*
  532 U.S. 742 (2001).......................................................................................................23, 29

*Pegram v. Herdich,*
  530 U.S. 211 (2000).............................................................................................................23

*Pereira v. Dow Chemical Co. (In re Trace International Holdings, Inc.),*
  301 B.R. 801 (Bankr. S.D.N.Y. 2003) ...............................................................................27

*Perez-Serrano v. DeLeon-Velez,*
  868 F.2d 30 (1st Cir.1989)..................................................................................................31

*Piombo Corp. v. Castlerock Properties (In re Castlerock Properties),*
  781 F.2d 159 (9th Cir. 1986) .................................................................................36, 37, 41

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,*
  507 U.S. 380 (1993).............................................................................................................36

*S.G. Phillips Constructors, Inc. v. City of Burlington, Vt.,*
  45 F.3d 702 (2d Cir. 1995).............................................................................................35, 36

*Schneiderman v. Bogdanovich (In re Bogdanovich),*
  292 F.3d 104 (2d Cir. 2002)................................................................................................40

*In re Singer,*
  2002 WL 243779 (S.D.N.Y. Feb. 20, 2002).......................................................................20

*Six West Retail Acquisition, Inc. v. Loews Cineplex Entertainment Corp.,*

vi

286 B.R. 239 (S.D.N.Y. 2002).........................................................................2

*Sonnax Industrial, Inc. v. TriComponent Prod. Corp. (In re Sonnax Industrial, Inc.),*
  907 F.2d 1280 (2d Cir.1990)...............................................................39, 40

*Tese-Milner v. TPAC, LLC (In re Ticketplanet.com),*
  313 B.R. 46 (Bankr. S.D.N.Y. 2004).........................................................43

*In re The Bridge to Life, Inc.,*
  330 B.R. 351 (Bankr. E.D.N.Y. 2005)........................................................16

*U.S. v. St. Louis University,*
  336 F.3d 294 (4th Cir. 2003) ....................................................................28

*United States v. Fotopulos,*
  180 F.2d 631 (9th Cir. 1950) ....................................................................35

*United States v. Security Industrial Bank,*
  459 U.S. 70 (1982)............................................................................33, 38

*Walsh Trucking Co. v. Insurance Co. of N. America,*
  838 F.2d 698 (3d Cir. 1988).......................................................................2

*Wight v. Bankamerica Corp.,*
  219 F.3d 79 (2d Cir. 2000).......................................................................26

*Zedner v. United States,*
  126 S. Ct. 1976 (2006)...........................................................................23

## FEDERAL STATUTES AND RULES

11 U.S.C. § 1121(d) .......................................................................1, 14, 44

11 U.S.C. § 362(d)(1) ..............................................................................39

11 U.S.C. § 501.......................................................................................36

11 U.S.C. §502(c) ...............................................................................1, 2, 4, 9, 10,
                                                                    17, 23, 31, 32, 36, 46

28 U.S.C. §1291......................................................................................19

28 U.S.C. §158(a) ................................................................................1, 19

28 U.S.C. §158(d)(2) ...............................................................................19

16A Wright & Miller, FEDERAL PRACTICE & PROCEDURE, § 3954 ........................................8, 9, 31

18 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE, § 4477 (1981)..........................................................................................................................23

130 Cong. Rec. S7619 ..........................................................................................................34

Fed.R.App.P. 8 ........................................................................................................................8

Fed.R.Civ.P. 62 ......................................................................................................................8

Fed. R. Bankr. P. 3002(a) ....................................................................................................36

Fed. R. Bankr. P. 3003(c)(3)................................................................................................36

H.R. Rep. No. 595, 95th Cong., 1st Sess. 343 (1977) ............................................40, 43

S. Rep. No. 989, 95th Cong., 2d Sess. 50 (1978) ..................................................40, 43

## STATE STATUTES

Mich. Comp. Laws § 443.1905..............................................................................................47

**STATEMENT OF APPELLATE JURISDICTION**

In its opinion and order on appeal[1], the court below denied appellant's motion to lift the automatic bankruptcy stay to permit retrial of a theft of trade secrets lawsuit in the United States District Court for the Eastern District of Michigan, pursuant to a mandate for that retrial issued by the United States Court of Appeals for the Sixth Circuit on June 15, 2007.  Appellant, Mike's Train House ("MTH") appeals under 28 U.S.C. §158(a). "In this circuit, denial of relief from an automatic stay is a final order."  *FDIC v. Niagra Mohawk Power Corp.,* 102 F.3d 671, 675 (2d Cir.1996).

MTH appeals the same order granting Debtor Lionel's cross-motion to "estimate" MTH's theft of trade secrets lawsuit, in a summary, non-jury, Article I proceeding pursuant to 11 U.S.C. §502(c).  Lionel's motion to estimate is the converse of MTH's motion to lift the automatic stay.  The reasons for granting Lionel's motion and denying MTH's motion were the same.  It is impossible to review the denial of relief from the automatic stay (appealable as of right) without also reviewing the granting of the motion to estimate, because granting the latter motion was the only reason for denying relief from the automatic stay.  Where, as here, the issues between the two cross-motions are "inextricably intertwined," there is appellate jurisdiction over the decision to estimate under the doctrine of pendent appellate jurisdiction.  *See Lamar Advertising of Penn LLC v. Town of Orchard Park,* NY, 356 F.3d 365, 372 (2d Cir. 2004).

The court below, in the same order, extended, for the fifth time, and over MTH's objection, the period during which Lionel enjoys the exclusive right to file a chapter 11 plan, pursuant to 11 U.S.C. §1121(d).  MTH appeals as of right under the express authority of 28 U.S.C. §158(a)(2).

---

[1] The Opinion and Order appealed from are attached as Ex. A to this brief for convenience.  It is electronically reported as *In re Lionel L.L.C.*, 2007 WL 2261539 (Bankr. S.D.N.Y. Aug. 3, 2007).

Finally, the court below expunged MTH's claim for statutory attorneys fees in connection with the trade secrets lawsuit. An order expunging a claim is final and appealable. *See Walsh Trucking Co. v. Insurance Co. of N. Am.*, 838 F.2d 698, 702 (3d Cir. 1988).

MTH filed a timely notice of appeal on August 13, 2007 from the Opinion and Order entered August 3, 2007.

## STATEMENT OF ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW

The issues presented are:

1) Whether the court below erred in refusing to grant MTH relief from the automatic stay to permit the re-trial of the trade secrets case against Lionel in the United States District Court for the Eastern District of Michigan;

2) Whether the court below erred in granting Lionel's motion to estimate MTH's trade secrets claim pursuant to 11 U.S.C. §502(c);

3) Whether the court below erred in granting to Lionel a fifth extension of the exclusivity period during which only Lionel may file a plan of reorganization and solicit acceptances;

4) Whether the court below erred in granting Lionel's motion to expunge MTH's claim for attorneys' fees in connection with its trade secrets claim.

A district court hearing an appeal from a bankruptcy court reviews that court's findings of fact under a "clearly erroneous" standard, and its conclusions of law *de novo*. *Six West Retail Acquisition, Inc. v. Loews Cineplex Entertainment Corp.*, 286 B.R. 239, 244 (S.D.N.Y. 2002) (Berman, J.). Matters left to the bankruptcy court's discretion are reviewed for abuse of discretion. *In re Adelphia Communications Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006).

The issues raised in questions (1), (2) and (4) above involve legal issues concerning the interpretation and application of statutes and Constitutional rights, as to which this Court's review is *de novo*. Issue (3) is reviewed for an abuse of discretion. *Id*.

2

## STATEMENT OF THE CASE

This case presents important issues of the ability of the bankruptcy process to interfere with a creditor's fundamental procedural and Constitutional rights in collateral Federal Court litigation, especially when the interference is unnecessary to promote the bankruptcy policies of debtor relief and enhanced recovery to creditors, and the interference destroys the creditor's rights to have its claim determined on the merits by an Article III judge and jury. In brief outline, MTH, the appellant, and Lionel are business competitors who make and sell high-end model trains. In June 2004, a jury in Federal District Court in Detroit, Michigan, where Lionel has its corporate headquarters, found that Lionel had willfully and maliciously stolen trade secrets of MTH (approximately 3,300 blueprints for designs of model trains), and awarded MTH $38.6 million in damages. The Federal District Court entered judgment on this verdict in November 2004. At the same time, that Court, based on that verdict and the trial evidence, entered a permanent injunction covering 20 separate model trains.

On Lionel's appeal, the United States Court of Appeals for the Sixth Circuit found three issues that required retrial. *See Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398 (6th Cir. 2006). The Court affirmed the denial of Lionel's motion for judgment n.o.v., but reversed the entry of the money judgment and the permanent injunction. It "REMAND[ed] this case to the district court for further proceedings consistent with this opinion." 472 F.3d at 415. The mandate for that retrial issued on June 15, 2007. A773.[2]

Meanwhile, Lionel filed for bankruptcy protection in the court below in November 2004, immediately after the money judgment was entered. Lionel is solvent and is valued, according to its investment bankers, at approximately $110 million. A752. But Lionel claimed it did not have the

---

[2] References are to the appendix volume of record materials in the court below which is being submitted with this memorandum to facilitate this Court's analysis of the record.

3

current liquidity to post the collateral for a bond to stay the $38.6 million judgment.  A19.  Lionel

scheduled MTH as its judgment creditor in filing for bankruptcy protection, A7, and MTH was

forced to file a claim in the court below, or else to lose all right to the judgment.  A38.1-38.6.  As of

December 2006, when the Sixth Circuit reversed the judgment and remanded for retrial, there was

no more judgment for Lionel to bond, and arguably no reason for it to stay in bankruptcy.

MTH and Lionel agreed to lift the automatic bankruptcy stay to permit litigation of post trial

motions in the Federal District Court in Michigan, and the appeal in the Sixth Circuit.  Ex. B hereto.

Hence, the automatic stay was lifted from December 2, 2004, immediately after Lionel entered

bankruptcy, until June 15, 2007, when the Sixth Circuit mandate issued for retrial.

However, when MTH moved in the court below on June 8, 2007 to continue to lift the

bankruptcy stay, to permit the retrial in Federal District Court that had been ordered by the Sixth

Circuit, Lionel opposed the motion.  Lionel moved instead to employ an "estimation" proceeding

under the bankruptcy statute, 11 U.S.C. §502(c), whereby the bankruptcy judge, without a jury,

"estimates" the value of the theft of trade secrets case in a short, summary proceeding lasting one or

two days, with a minimal number of witnesses and no clear procedural guidelines.  That

"estimation" extinguishes MTH's right to any further retrial.  In MTH's view, not only does the

decision below effectively read the requirement of "undue delay" out of the estimation statute, it

contravenes the Sixth Circuit's remand order and mandate for new trial, as well as MTH's Seventh

Amendment right to a jury trial, its Fifth Amendment right to due process, and its Article III right to

a judge who may employ the full judicial power of the United States.

The order under appeal granted Lionel's motion to estimate and denied MTH's cross-motion

to permit retrial in Federal District Court.  The same order extended Lionel's right to exclusivity –

to be the sole entity permitted to file a proposed plan of reorganization.  Lionel's plan requires the

court below to "estimate" the MTH lawsuit in an amount that Lionel, in its sole discretion, finds to

4

be "reasonably satisfactory." The court denied to MTH the right to file a competing plan for consideration.

## A. Description of the Trade Secret Case

Evidence presented in the theft of trade secrets trial in the Eastern District of Michigan showed that MTH and Lionel are the only two manufacturers of die-cast scale model O gauge electric train engines in the U.S. marketplace. These trains are authentic scale model versions of actual engines. Each requires 200 to 300 separate drawings or blueprints, and is made using an expensive zinc die casting process. The engines are prized by collectors and model train operators, and have sold at retail for as much as $1,400 per engine.

Lionel had a 100 year old famous name, but by the mid-1990's was saddled with what its chief engineer described in an internal memo as an "aging and unreliable product line." MTH, a new, young company, pioneered the manufacture of highly detailed scale model zinc die cast trains. By 1996 MTH was making $9 million per year in profits.

The trial evidence showed that Lionel and its South Korean fabricator of trains ("Korea Brass") agreed to, and did, steal over 3,300 MTH drawings for 20 separate models of trains. These were highly guarded trade secrets because they gave the exact dimensions, tolerances, and tooling information. Lionel used these trade secrets to make and import into the U.S. knock-off engines, identical to MTH's. Lionel flooded the U.S. market, and in a few years earned more than $16 million in illegal profits.

The South Korean police arrested, and the Korean courts criminally convicted, the chairman of Korea Brass, and four draftsmen who had carried out the thefts. A Professor of Mechanical Engineering, appointed as a Court Appraiser, found that thousands of CAD drawings were copied.

The damage to MTH was catastrophic. It made $6 to $9 million in yearly profits before the thefts. It has operated at a loss or break even point in the six years since. MTH had to lay off half

5

of its workforce. Lionel's actions eroded the collectors' market – as collectors saw market flooding by Lionel's knock-offs, there was rampant discounting and refusal to buy trains. Inventories mounted. The bank tightened MTH's credit. MTH could not afford the tooling for new projects. Internal emails showed that Lionel and Korea Brass intended to put MTH out of business.

### B.  The Trade Secret Trial in Federal Court, and Appeal

MTH sued Lionel in MTH's home district, Maryland, where the injury to MTH occurred. Lionel moved the case to the federal court in Detroit, its home, under a forum selection agreement. A249.

After extensive discovery, pretrial motions, and expert reports, the case was ready for trial in May, 2004. The Federal District Judge, the Honorable John Corbett O'Meara, has presided over numerous civil and criminal trials. He allotted 30 hours to plaintiffs and 30 hours to Lionel and Korea Brass jointly to try the case. This included all time for direct examination, cross-examination, re-direct, and voir dires of expert witnesses. He held the parties strictly to these time deadlines. During these 60 hours, a total of 34 witnesses testified. Plaintiff called 15 live witnesses, and read depositions of 4 others. Defendants called 10 live witnesses and read 5 depositions. The parties moved into evidence 489 exhibits.

On June 7, 2004, the jury returned a verdict finding that both Lionel and Korea Brass had misappropriated MTH's trade secrets, and that the misappropriation had been "willful and malicious."[3] The jury assessed damages of $38.6 million against Lionel, for a combination of Lionel's unjust enrichment and MTH's lost profits. This was less than MTH's damages expert, a Harvard trained expert, had testified to as combined damages. A754.

---

[3]  The docket of the case is accessible through Pacer at: *Mike's Train House v. Lionel LLC, et al* 2:00-cv-71729-JCO (E.D. Mich.). The jury verdict is docket no. 308, and the subsequent entry of judgment is docket no. 364. The permanent injunction is docket no. 363. The mandate for new trial is docket no. 393.

Lionel appealed to the Sixth Circuit. In December 2006, that Court rendered its opinion. *Mike's Train House, Inc. v. Lionel, L.L.C.* 472 F.3d 398 (6th Cir. 2006). The Court held there were three trial errors that required retrial. It held that: (1) an ambiguous Michigan statute required the jury to apportion liability among the defendants, rather than holding them jointly and severally liable for this intentional tort, *id*. at 414; (2) the district court had not made adequate *Daubert* findings to admit the trial testimony of one of plaintiff's experts, *id.* at 407-409; and (3) there had been duplication of damages, requiring retrial, *id*. at 415.

At the same time, the decision rejected key arguments by Lionel. The Court held that all of the Korea documents generated by the South Korean police and the Korean judicial system – guilty pleas, confessions, civil and criminal judgments, arrest warrants, seizure records – were fully admissible against Lionel on retrial. *Id*. at 411-412. And it rejected Lionel's contention that the MTH design drawings were not "trade secrets." *Id*. at 409-411.

The Sixth Circuit in December, 2006 "REMAND[ed] this case to the district court for further proceedings consistent with this opinion." 472 F.3d at 415. On June 15, 2007, the mandate issued from the Sixth Circuit to retry this case. A773.

### C. Lionel's Bankruptcy

Lionel was, and is, a solvent company. Lionel is worth between $99 million and $122 million, with a midpoint of $110 million. A752. At the time of its bankruptcy, Lionel had debt of $43 million. A16-17. Before bankruptcy, it was profitable and could pay all of its suppliers and creditors in a full and timely manner, and since bankruptcy it has acknowledged that it can pay all of its trade creditors 100 cents on the dollar, plus interest. A83-84.

Lionel filed for bankruptcy protection in the court below in November 2004, two weeks after the $38.6 million judgment was entered in Detroit, claiming as the reason: "Lionel does not

7

have sufficient liquidity or financial strength to post a [$38.6 million] bond to stay enforcement of the judgment pending appeal."  A19.

Lionel filed  for bankruptcy without trying to modify the bond requirement in the district court under FED.R.CIV.P. 62, or in the Court of Appeals under FED.R.APP.P. 8.  "Appellate Rule 8(a)(2)(E) authorizes a court of appeals to stay payment of a money judgment with or without bond or other appropriate security."  16A Wright & Miller, FEDERAL PRACTICE & PROCEDURE, § 3954. Nor did Lionel ask MTH if it would voluntarily stay execution of the judgment, pending decision by the Sixth Circuit.  Any of these steps could have avoided bankruptcy.

Lionel has expended during bankruptcy approximately $10 million, much of which could have been avoided if Lionel had sought to make other bonding arrangements rather than rushing headlong into bankruptcy.  "Lionel has spent approximately $10 million dollars in total fees and expenses of which $5 million relates purely to the administration of the chapter 11 cases, including the company's attorneys and professionals, the committee's professionals, United States Trustee's fees and other similar fees."  Ex A, Opinion, p. 7.

As of December , 2006, when the Sixth Circuit vacated the judgment and remanded for new trial, there was no more judgment to bond.  The reason that Lionel went into bankruptcy was moot.

Notwithstanding its payment of $10 million in fees, Lionel has repeatedly stated that it continued to prosper during the time it has been in bankruptcy court:

> For the fiscal year ended December 31, 2005, the Debtors expect to report EBITDA[4] of approximately $11.2 million on sales of approximately $56.6 million.  These results evidence a marked improvement over the Debtors' financial performance for the several years preceding the commencement of the chapter 11 cases, including the fiscal year ended December 31, 2004, where reported EBITDA was only approximately $7.2 million on sales of $52.3 million. (Lionel, January 6, 2006, at ¶14, A188.)

---

[4] "EBITDA" stands for earnings before interest, taxes, depreciation and amortization.

> The Debtors' financial condition continues to improve in 2006.  As an example, orders for the week ending July 2, 2006 were approximately $54.2 million year to date, compared to approximately $46.6 million for the same period last year.  (Lionel, July 11, 2006, at ¶17, A204.)
>
> . . . .
> For the fiscal year ended December 31, 2006, the Debtors reported EBITDA of approximately $11.1 million (before restructuring costs) on sales of approximately $62.2 million.  These results evidence a marked improvement over the Debtors' financial performance for the several years preceding the commencement of the chapter 11 cases… The Debtors expect their business to continue growing in 2007.
> (Lionel, February 9, 2007, ¶21, A224.)

On January 9, 2007, the court below acknowledged that: "The Debtor's business is not hurting at this point in time."  (A62, lines 13-14.)

In moving to estimate the trade secret lawsuit, Lionel did an abrupt about-face on June 27, 2007, suddenly asserting to the court below that bankruptcy had hurt its business terribly.  A576-584.  The court below relied on this in the Order under appeal.  Opinion, pp. 6-7.  These contradictions are addressed in the Argument Section, pp. 24-26 below.

### D.  The Bankruptcy Court *Sua Sponte*  Proposes Estimation

The bankruptcy court stated on January 9, 2007 that it was prepared to make a "very quick" estimation of the trade secret case, unless settlement was forthcoming:

> If the parties can't get together and resolve their differences, then the Court will have a very quick 502(c) estimation…

A63, lines 10-13.  *Id.*, A62, lines 23-24.  This was six months before Lionel filed its motion to estimate on June 1, 2007 (A155-172).  The court below was aware of the Sixth Circuit's December 14, 2006 remand order at this time.

### E.  Lionel's Obstruction of Conference Call with Judge O'Meara

The "estimation" procedure required the bankruptcy court to find there would be "**undue delay**" in a retrial before Judge O'Meara.  11 U.S.C. §502(c).  MTH sought to obtain information from Judge O'Meara to present to the court below on when that retrial could be scheduled.  A756.

9

Lionel actively obstructed and frustrated the inquiry, writing to Judge O'Meara that it would be "inappropriate (and potentially in violation of the [automatic bankruptcy stay]) for Your Honor to conduct any proceedings relating to this Litigation, including an informational conference call." A759-760.  As a result,  Judge O'Meara declined to have the informational conference call.  At the time this occurred, Judge O'Meara had scheduled a trial for October, 2007 of the claim by MTH against Lionel's co-defendant in the lawsuit, Korea Brass. [5]  The informational telephone call would have informed the parties whether the re-trial against Lionel could be substituted into this time slot, to prevent any delay in the retrial.  A763.

### F.  Comparison of Estimation and Retrial Procedures

Lionel has candidly acknowledged that "estimation" under 11 U.S.C. §502(c) is essentially an *ad hoc* procedure – it is not governed by the federal rules of evidence or any other body of rules, and can constitute as little as "a mere review of briefs, pleadings and oral arguments of counsel.  It's simply up to the court to decide what is appropriate in the context of each case."  A716.  Lionel proposed to the court below a plan for a "summary trial" estimation procedure, A171-172, which is contrasted below with the actual trial that occurred before Judge O'Meara in Detroit, which is a good gauge for a retrial before him:

| **Original Trial** | **Lionel Estimation Procedure** (A171-172) |
|---|---|
| **Trial Time**:  30 hours per side, 60 hours total for all evidence, excluding argument, motions, *in limine* hearings, etc. | "Summary trial": 6 hours per side, including opening and closing arguments |
| **Factfinder**:  Federal Jury | Bankruptcy Judge |

---

[5] Korea Brass, unlike Lionel, did not appeal to the Sixth Circuit, and therefore the vacation of the judgment as to Lionel did not affect the continued final judgment as to Korea Brass.  However, Korea Brass sought to avoid the judgment by what MTH claims is a fraudulent transfer of its assets to an alter ego.  That case is pending at *MTH v. Korea Brass Company, Limited et al.*, 5:06-cv-10375-JCO-DAS (E.D. Mich.)(O'Meara, J.).  Judge O'Meara had initially scheduled trial for October, 2007.  MTH sought a conference call with Lionel and Judge O'Meara, to determine if the Lionel retrial could be substituted for this time slot.

| | |
|---|---|
| **Presiding officer**: Article III Judge | Bankruptcy Judge |
| **Total witnesses testifying**: 34 | "written" direct testimony from 3 witnesses per side, with live cross examination. |
| **Exhibits Admitted:** 489 | ? |
| **Method of Determination:** On the merits | Estimated or predicted liability and damages based on limited presentation |

### G.  Comparison of Time

The court below made its key finding that there would be "undue delay" in a retrial in Federal Court through the following calculation.  It compared  (1) the time that a retrial would take before Judge O'Meara, **including** a subsequent appeal to the Sixth Circuit;  compared to (2) the time an estimation proceeding would take in bankruptcy court **with no** appeal to this District Court or Second Circuit.

In the decision under appeal, the court below wrote:

> MTH contends there will not be an undue delay in the administration of these chapter 11 cases if the stay is modified to allow the case to be retried in the Michigan Court. That simply defies logic. An estimation proceeding in this Court can be conducted within a very short period of time versus a full-blown jury trial in Michigan which is not even calendared. In the first trial, the parties engaged in 18 days of trial resulting in the jury verdict in June 2004. Post-trial motions and briefing were not concluded until November 2004, when Lionel's motion for a new trial was denied and judgment was finally entered. The appeal to the Sixth Circuit, including MTH's Petition for Reconsideration, consumed an additional two years and three months. Under the procedures proposed by Lionel in connection with the Estimation Motion, estimation of the Trade Secrets Damages Claim could be concluded by the end of August, 2007.

Ex. A, opinion p. 8.

This failed to consider that the loser in the estimation proceeding would have appellate rights, just as would the verdict loser in Michigan.  Indeed, there would be two levels of such rights: to this Court and to the Second Circuit.

11

Publicly available statistics published by the U.S. Office of the Administrative Courts (www/uscourts/gov) shed light on a comparison of time when appeals are factored in on both sides of the equation.  Statistics show that the Sixth Circuit has a median time of **13.4 months** from filing of notice of appeal to final disposition.  See http://www.uscourts.gov/cgi-bin/cmsa2006.pl (Ex. C hereto for convenience).  Statistics show that in this Circuit the median time for bankruptcy appeals is **24.7 months**, from docketing the appeal in the District Court to final disposition in the Second Circuit.  See http://www.uscourts.gov/judbus2006/appendices/b4.pdf (Ex. D hereto for convenience).  Hence, when the relevant appellate time is factored in, the final disposition of an estimation proceeding would be longer than a retrial in Federal District Court.

Using the statistics published by the Administrative Office of the U.S. Courts, a realistic time schedule for comparison of the two proceedings is:

| Retrial in Federal Court | Estimation in S.D.N.Y. Bankruptcy Court |
|---|---|
| **Start**: October, 2007 | September, 2007 |
| **Duration**: 60 hours | Duration:  12 hours (Lionel's proposal) |
| **Conclusion**: October, 2007 | September, 2007 |
| **Post trial motions decided**: December, 2007 | Bankruptcy written findings of fact and conclusions of law on estimation:  October, 2007 |
| **Final Resolution after appeal to the Sixth Circuit**: **January, 2009** | **Final Resolution After Appeals to District Court and Second Circuit**:  **May, 2010** |

### H.  MTH's Proof of Claim

Lionel brought MTH into the bankruptcy court by listing MTH as its largest judgment creditor on the schedule it filed with its initial application.  A7.  MTH was subsequently forced to file a *pro forma* proof of claim in order to protect any rights to its federal judgment, which was then on appeal.  (A copy of the claim form is A38.1-38.6.)  Had MTH not done so, MTH would have lost all rights to a judgment or a retrial.  See p. 36 note 13 below.

12

## I.  Lionel's Representations To the Sixth Circuit

In August, 2005, nine months after it filed for bankruptcy protection, and three months after

MTH filed its bankruptcy proof of claim, Lionel stated to the United States Court of Appeals for the

Sixth Circuit that there was a Constitutional right under the Seventh Amendment to a jury retrial of

the trade secrets case because of errors made at the first trial.  Lionel stated in pertinent part:

> Lionel is constitutionally entitled to a jury determination as to the
> amount of damages for which it can be held liable.

A242.

Lionel repeated this in its reply brief to the Sixth Circuit.

> Lionel was constitutionally entitled to a jury determination allocating
> its damages liability.  A new trial must be ordered.

A247.

## J.  The Federal Court Injunction

Based on the jury verdict and the trial evidence presented, Judge O'Meara entered a

permanent injunction preventing Lionel from using stolen drawings, or tooling made from those

drawings, to manufacture 20 models of trains.  Ex. E hereto.  Because the Sixth Circuit remanded

for a new trial, it vacated this injunction, remanding for consideration of its re-entry.  472 F.3d at

415.

## K.  The Real Beneficiaries of the Estimation

Lionel is solvent.  It has proposed a plan to pay all creditors in full, plus interest, including

MTH.  (A83-84, A136-138).  Lionel currently has total debts, including all secured and unsecured

debt, pre-petition and post-petition, of about $62 million, leaving aside its liability to MTH, which

is currently undetermined.  A614, line 7.  Lionel is worth about $110 million.  A752.  That leaves

almost a $50 million surplus, not factoring in liability to MTH.

13

Because the full payment to other creditors is unaffected by the Lionel-MTH dispute, to the extent Lionel is able to minimize the amount of MTH's claim, its owners benefit. To the extent that Lionel's owners are able to employ the bankruptcy estimation power to minimize MTH's claim, this redounds to the benefit of Lionel's owners. This is an inversion of the "absolute priority rule," which is supposed to place the entitlements of creditors ahead of those of equity holders.

Moreover, the improper exploitation of the estimation power benefits the insiders. Lionel is privately held. One group of insiders plan to sell Lionel to another group of insiders as soon as Lionel exits from bankruptcy. The current Chairman of Lionel, Greg Feldman, stated that he and his control group intend to sell Lionel to the current CEO, Gerald Calabrese, and his investors. Mr. Feldman admitted that "he wants to sell it immediately…he was intending to sell the moment he got out of bankruptcy." A484 at pp. 58-59, A490 at p. 82 and A491 at p. 87. Mr. Calabrese stated that he intended to purchase Lionel as soon as Mr. Feldman sold it. A491 at p. 87. Such a sale, coupled with a "quick estimation" of the MTH liability, would yield substantial profits to Mr. Feldman and current equity holders.

### L.  Exclusivity

"Exclusivity" means that only the debtor, Lionel, is permitted to file a proposed plan of reorganization. The bankruptcy statute permits the debtor exclusivity for the first 120 days after entering bankruptcy. 11 U.S.C. §1121(a). Thereafter, an extension has to be by order of the court, for good cause shown. To date, the court below has permitted Lionel "exclusivity" from November, 2004 to present, extending the period five times. On August 2, 2007, in the order under appeal, the court below granted to Lionel its fifth request, which MTH opposed.

Lionel's current plan of reorganization, as to which it has been granted exclusivity, requires the estimation of the MTH trade secrets lawsuit. Further, it requires that the bankruptcy judge "shall have entered one or more orders estimating the MTH Claims. . .in each case in amounts

14

**reasonably satisfactory** to the debtors." (A152 at Article XII, A.5) (emphasis supplied).  As its counsel candidly stated, MTH's claims have to be estimated "in amounts acceptable to Lionel." A568, line 11.

MTH opposed this last request (and now appeals from its granting), because MTH has indicated to the court below that, if exclusivity were terminated, MTH could propose a competing plan that would also pay all secured and unsecured creditors (leaving aside MTH) 100 cents on the dollar, plus interest; which would treat MTH's lawsuits in a fair and equitable manner; and which would permit Lionel to emerge from bankruptcy and not face the prospect of re-entry because of a large judgment by MTH.  MTH has suggested proposals for consideration, including these:

> a.    **A payout of MTH's claims, subject to an annual cap**:  All other creditors would be paid in full with interest immediately (as Lionel acknowledges it can do), pursuant to a plan funded by a combination of debt and equity currently contemplated by Lionel, with nothing reserved for MTH, while MTH's claims are resolved post-bankruptcy in federal proceedings.[6]  After the litigation is finally determined, the resulting judgments, if any, would be paid over time to MTH, capped at an annual payment of $5 million until the judgments and post-judgment interests are satisfied.  The $5 million cap should be affordable based on Lionel's savings of professional fees incurred for the bankruptcy and the litigations, plus additional cash flow available per Lionel's projected growth in earnings.

> b.    **A sale of Lionel with an escrow for MTH liability**.  Its investment bankers estimated the going concern value of Lionel in a range of $99 million to $122 million, with a midpoint of $110 million.  A floor price for the sale would be the amount sufficient to pay all debts in full plus interest, roughly $60 million.  The excess would be escrowed pending a post-bankruptcy resolution of the litigation of MTH's claims on their merits in court.  MTH would receive this excess up to the amount of its judgments, plus post-judgment interest.  The balance would be distributed to the existing equity holders.

---

[6] In addition to the theft of trade secret claim at issue in this appeal, MTH has patent infringement claims pending against Lionel.

A458-59. The Court below, in its Order under appeal, extended Lionel's exclusivity, without addressing these proposals.

## ARGUMENT

### POINT I
### THE COURT BELOW ERRED IN DENYING THE MOTION TO PERMIT RETRIAL, AND IN ORDERING ESTIMATION

The court below erred by deciding that a bankruptcy estimation proceeding could and did trump the mandate of the Sixth Circuit to retry this case in federal court before a jury.

The further thrust of this appeal is that bankruptcy estimation power is improperly invoked where, as here, a company that is admittedly solvent and able to pay its creditors in full – the reason that impelled it into bankruptcy having been rendered moot – uses this extraordinary power for the sole purpose of gaining a tactical advantage in collateral federal court litigation over its business competitor, a competitor which it has demonstrably wronged and who is seeking redress in federal court. MTH is not an ordinary trade creditor who took the risk of doing business with Lionel and now seeks to collect on its debt in a bankruptcy case. Rather, Lionel intentionally stole its trade secrets and tried to put it out of business. That bankruptcy procedures should now insulate and protect Lionel from a jury retrial is patently wrong.

That is especially true where, as here, the object for using the bankruptcy procedure is for one group of Lionel insiders to enrich another group of Lionel insiders at the expense of the victim:

> **Chapter 11 was never intended to be used as a fist in a two party bout.** The Chapter is entitled reorganization and not litigation.

*In re The Bridge to Life, Inc.*, 330 B.R. 351, 357 (Bankr. E.D.N.Y. 2005) (emphasis supplied).

Significantly, no case cited by the court below or by Lionel in support of estimation has ever sanctioned the use of estimation in the circumstances presented here: where a solvent debtor that is able to pay its creditors in full wishes to circumvent a mandate from a Federal Court of Appeals for

16

a retrial in Federal District Court, in order obtain a procedural advantage over its competitor and

largest creditor, for the benefit of owners and insiders. [7]

The decision appealed from should be reversed for the reasons which follow.

### A.  The Court Erred In Finding "Undue Delay" In A Federal Retrial

Estimation procedure can only be invoked under 11 U.S.C. §502(c) upon finding there

would be "undue delay" by "fixing" or "liquidating" the claim (in this case, by permitting a retrial

in Federal District Court).  The statute reads in pertinent part:

> (c) There shall be estimated for purpose of allowance under this
> section--
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of
> which, as the case may be, would unduly delay the administration of
> the case;
>
> (2) any right to payment arising from a right to an equitable remedy
> for breach of performance.

The Bankruptcy Code does not define "undue delay."  But it is incumbent to give effect to

all of the statutory language.  *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 302 (2d Cir.

1997).  "Undue" means "unwarranted; excessive" or "inappropriate; unjustifiable; improper."

*Random House Dictionary* 1547 (unabridged ed. 1971).  Delay means "impede the progress of."  *Id*.

at 381.  Since delay is modified in the statute by "unduly," some deferral, postponement or

impediment to the progress of the administration of the case in fixing or liquidating the claim must

---

[7] "Estimation" can serve many useful purposes in bankruptcy.  For example, it can serve as an
interim benchmark **until** another court actually adjudicates the lawsuit, as was done in the seminal
estimation case, cited by the court below, *Bittner v. Borne Chemical, Inc.*, 691 F.2d 134, 137 (3d
Cir. 1982).  Or estimation can roughly value the respective weight of claims of different creditors to
determine their relative voting rights in the case.  In another case cited by the court below, the
Second Circuit endorsed, in *dicta*, "the speedy and rough estimation of CERCLA Claims **for
purposes of determining EPA's voice in the Chapter 11 proceedings, with ultimate liquidation
of the claims to await the outcome of normal CERCLA enforcement proceedings…**"  *In re
Chateaugay Corp*., 944 F.2d 997 (2d Cir. 1991) (emphasis supplied).  Here, in contrast, estimation
is a substitute for the jury retrial, used to extinguish MTH's cause of action for theft of trade secrets.

therefore be tolerated.  Consequently, the kind of deferral, postponement, or impediment that

triggers the ability to estimate is an unwarranted, excessive, inappropriate, unjustifiable or improper

one.  As the bankruptcy court observed in *In re Dow Corning Corp*., 211 B.R. 545 (Bankr. E.D.

Mich. 1997):

> From the plain language of §502(c), it is clear that estimation does not
> become mandatory merely because liquidation may take longer and
> thereby delay the administration of the case.  Liquidation of a claim,
> in fact, will almost always be more time consuming than estimation.
> Nevertheless, bankruptcy law's general rule is to liquidate, not to
> estimate.  For estimation to be mandatory, the delay associated with
> liquidation must be "undue." … Something is "undue" if it is
> unjustifiable.

*Id*. at 563.

The court below erroneously held there that "undue delay" occurred whenever a final

adjudication by an Article III Court is "not forthcoming":

> Thus, when the liquidation of a claim is premised on litigation
> pending in a non-bankruptcy court, and the final outcome of the
> matter is not forthcoming, the bankruptcy court should estimate the
> claim.

Opinion, p. 5.  But an "unjustifiable delay" is not even roughly synonymous with "the final outcome

of the matter is not forthcoming" in an Article III Court.  If it were, it would mean there was "undue

delay" in every case **except** where the Court of Appeals had ruled with finality and the Supreme

Court had denied, or was about to deny, certiorari.  It would find an "undue delay" every time a

Court of Appeals remanded a case, as occurred here---the Sixth Circuit ruling was not a "final

outcome."  There is no support for this interpretation of the words "undue delay" either in the

dictionary, or the legislative history of §502(c).  Hence, the court below erred in construing the

statute.

The court below also used a legally erroneous method of computation to determine that the

Federal Court retrial would "unduly delay administration of the case."  It compared the time for

retrial in Federal Court in the Sixth Circuit **with** appellate rights factored in, versus the time for estimation in the bankruptcy court in the Second Circuit **with no** appellate rights factored in. See pp. 11-12 above, and Opinion, Ex. A, p. 8. This obviously mixes apples and oranges.

In the estimation proceeding before the bankruptcy judge, the loser would have two rights of appeals—to this Court and to the Second Circuit. *See* 28 U.S.C. §158 and 28 U.S.C. §1291.[8] In a retrial in Federal District Court, there would be one level of appeal, to the Sixth Circuit. 28 U.S.C. §1291. It is reversible error for the bankruptcy court to have employed a method for calculating "undue delay" that factors in time for appellate rights in the Sixth Circuit, but does not factor in any time for appellate rights in the Second Circuit.

While normally this error would cause vacation of the order at issue, and remand for the court below to make a correct computation, in this case this Court can use statistics published by the Administrative Office of the U.S. Courts to make the correct comparison itself, without need for remand. Proceeding in the Second Circuit would take an average time of 23.4 months, compared with an average time of 13.4 months in the Sixth Circuit. See pp. 11-12 above and Exhibits C and D hereto. Hence, there is clearly no justification for an "estimation" procedure here. There is **no** delay by proceeding in the Sixth Circuit, let alone "undue delay."

The court below made a number of subsidiary errors. It refers to the fact that the trial before Judge O'Meara is "not even calendared" (Opinion, p. 8), when the court below was aware that Lionel obstructed the conference call designed to elicit that very information from Judge O'Meara. *See* pp. 9-10 above. And the court below referred to an elongated time for post trial briefing (June, 2004 to November, 2004), without acknowledging that Lionel had insisted upon an elongated

---

[8] In announcing his ruling orally from the bench, the court below stated that Congress had permitted bypass of the first level of review upon consent of the parties. A742-732. That is incorrect. The referenced statute, 28 U.S.C. §158(d)(2), does not apply to the outcome of an estimation hearing, and only applies to cases commenced after October 17, 2005. The court did not reference this statute in its written opinion, issued the next day.

briefing schedule.  The jury verdict was rendered in June, 2004.  Post trial briefing was completed

on September 1, 2004.  Judge O'Meara on September 15, 2004 ordered all post-motions to be

argued on  October 19, 2004.  The Court entered its opinion and Orders on post trial motions on

November 1, 2004 (docket entries 361-362).  It entered judgment two days later.   This does not

constitute "undue delay."[9]

The court below stated that the Sixth Circuit appeal consumed "two years and three

months."  Opinion, p. 8.  The court did not consider (although the information was presented to the

court) that this was, in part, because Lionel sought lengthy and unnecessary delays to order old

transcripts it did not need and did not use on appeal.  When MTH moved to expedite the appeal in

the Sixth Circuit, Lionel opposed the motion.  There is no evidence that, upon retrial, a second

appeal would take longer than the Sixth Circuit median time of 13.4 months.  (See Ex. C hereto).

Finally, the court below did not factor in its calculation that MTH also has patent

infringement litigation pending against Lionel for infringing multiple MTH patents.  That litigation

cannot be adjudicated in bankruptcy court.  Rather, it is mandatory to withdraw the reference from

bankruptcy court to an Article III Court for discovery, claim construction, *Markman* hearings, and

trial. *See In re Singer*, 2002 WL 243779 at *3 (S.D.N.Y. Feb. 20, 2002)(Pauley, J.) "…[M]andatory

removal is proper here because resolving the complaint will require the substantial and material

---

[9] This case contrasts starkly with one relied upon by Lionel, and cited approvingly by the court
below, *In re Baldwin United Corp*., 55 B.R. 885, 889 (Bankr. S.D. Ohio 1985), where there was a
basis for finding "undue delay."  Broker dealers were defendants in a federal securities class action
law suit.  That suit was in its infancy.  It had to go through discovery, class certification, expert
discovery, trial, and appeal.  At the end of that entire process, the broker dealers **might**, if they lost,
have claims for indemnity and contribution against the issuer, the debtor in bankruptcy.  If so, those
claims would then have to go through discovery, trial and appeal.  In short, any legal resolution of
the indemnity and contribution claims would be years and years in the future, and only at the
conclusion of the lawsuits.  In those circumstances, the court stated that estimation of the
indemnity/contribution claims was appropriate because awaiting the outcome of all of these legal
proceedings would involve undue delay. That bears no resemblance whatever to the case at bar.

consideration of patent law.")  A*ccord In re McCrory Corp. v. 99 Cents Only Stores*, 160 B.R. 502, 505 (S.D.N.Y. 1993).

Those proceedings will require more time to adjudicate than the retrial of the trade secrets lawsuit before Judge O'Meara.  The bankruptcy cannot be concluded until those proceedings are concluded.  This is yet another reason why the theft of trade secrets lawsuits cannot possibly constitute "undue delay" of the bankruptcy.

### B.  Lionel is Barred from "Estimation" by Judicial Estoppel

The doctrine of judicial estoppel prevents a litigant from speaking out of both sides of its mouth with equal fervor and conviction – making and benefiting from inconsistent representations in the judicial process.  It does not require that the representations be made to the same court, or simultaneously in time.  The doctrine, rather, ensures the integrity of the judicial process, by preventing a litigant from playing fast and loose – making one representation to a court when it suits its purpose, and then changing and making the opposite representation to the same or another court when it is more convenient to do so.  While the Second Circuit has traditionally emphasized that the inconsistent representations are of a "factual" nature, the Supreme Court's recent formulations do not so limit the doctrine.

Lionel has seriously and repeatedly violated the doctrine of judicial estoppel in four separate respects, all germane to this appeal:  (1) Lionel represented to the Sixth Circuit Court of Appeals that it had a "Constitutional right" to a jury retrial in Federal District Court;  now, after having prevailed in the Sixth Circuit and securing a remand for that retrial its estimation motion deprived MTH of that very right; (2) Lionel told the court below repeatedly that its business was prospering while it was in bankruptcy, so that the court below should extend its exclusivity period five times; then, when Lionel sought "estimation" of the MTH's trade secrets claim, it suddenly did an about-face; (3) Lionel entered into an agreement with MTH to try the Trade Secrets Case in the Eastern

21

District of Michigan, and benefited substantially from that agreement; now, it seeks to repudiate that agreement; and (4) Lionel told the court below, when Lionel's own trade secrets were stolen by its former chief engineer (who also stole MTH's trade secrets) that theft of trade secrets involves "irreparable harm" that requires an injunction. Now, Lionel seeks an estimation procedure which cannot provide such injunctive relief.

### (1) Representations About Constitutional Right to Jury Retrial

Lionel, prior to bankruptcy, stipulated that this case should be tried before a federal jury in the Eastern District of Michigan, and it was so tried. While the case was on appeal, in August, 2005, Lionel told the Sixth Circuit that it should remand for a retrial before a jury, because Lionel had a Constitutional right to that jury retrial. Lionel stated to the Court: "Lionel is constitutionally entitled to a jury determination as to the amount of damages for which it can be held liable," (A242) and "Lionel was constitutionally entitled to a jury determination allocating its damages liability. A new trial must be ordered." (A247).

Lionel succeeded in persuading the Sixth Circuit to issue the mandate for that new trial, vacating the verdict in favor of MTH. Lionel is now barred by the doctrine of judicial estoppel from claiming that there is no such right to a jury retrial. This argument, and the basis for it, were presented to the court below, but the court declined to address it in its opinion.

Lionel is not be permitted to argue one position to the Sixth Circuit, win on that position, and then take a contrary position in the court below. The doctrine of judicial estoppel "precludes a party that successfully maintained a particular position in one legal proceeding, from assuming a contrary position in a later proceeding solely because of a change in interest." *Mulvaney Mechanical, Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 288 F.3d 491, 504 (2d Cir. 2002).

As described by the Supreme Court:

> This rule, known as judicial estoppel, "generally prevents a party
> from prevailing in one phase of a case on an argument and then

> relying on a contradictory argument to prevail in another phase."
> *Pegram v. Herdich*, 530 U.S. 211, 227, n.8 (2000); see 18 Moore's
> Federal Practice § 134.30 p. 134-62 (3d ed. 2000) ("The doctrine of
> judicial estoppel prevents a party from asserting a claim in a legal
> proceeding that is inconsistent with a claim taken by that party in a
> previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, *Federal
> Practice and Procedure*, § 4477, p. 782 . . . (1981) ("absent any good
> explanation, a party should not be allowed to gain an advantage by
> litigation on one theory, and then seek an inconsistent advantage by
> pursuing an incompatible theory").

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  In that case, judicial estoppel was invoked to

prevent the State of New Hampshire from asserting in a boundary dispute with Maine a different

interpretation of the term "Middle of the River" from the one it had agreed to in a prior consent

decree.  *Id*. at 751.

The Supreme Court recently described the doctrine and its elements as follows:

> [W]here a party assumes a certain position in a legal proceeding, and
> succeeds in maintaining that position, he may not thereafter, simply
> because his interests have changed, assume a contrary position…
>
> . . . .
> Although this estoppel doctrine is equitable and thus cannot be
> reduced to a precise formula or test, "several factors typically inform
> the decision whether to apply the doctrine in a particular case: First, a
> party's later position must be clearly inconsistent with its earlier
> position. Second, courts regularly inquire whether the party has
> succeeded in persuading a court to accept that party's earlier position
> .... A third consideration is whether the party seeking to assert an
> inconsistent position would derive an unfair advantage or impose an
> unfair detriment on the opposing party if not estopped." Id., at 750-
> 751, 121 S.Ct. 1808 (citations and internal quotation marks omitted).

*Zedner v. United States*, 126 S. Ct. 1976, 1987-88 (2006).

Here, the above elements of estoppel set forth in *Zedner* are clearly satisfied:  Lionel has

taken two contrary positions, has benefited from both, and has disadvantaged MTH unfairly.

Significantly, Lionel made its representations to the Sixth Circuit in August, 2005.  It filed

for bankruptcy protection in November, 2004.  Hence, Lionel was well aware of the "estimation"

procedure of 11 U.S.C. §502(c) when it made its representations to the Sixth Circuit.  It was also

aware of the claim form MTH was forced to file in bankruptcy in May 2005.  A38.1-38.6.  Lionel cannot claim the bankruptcy is a "changed circumstance" that allows it to make new and inconsistent representations.

Courts have found judicial estoppel in the context of bankruptcy proceedings.  Very recently, in *ACC Bondholder Group v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)*, 367 B.R. 84 (S.D.N.Y. 2007), Judge Scheindlin employed judicial estoppel to dismiss an appeal of a confirmation order by a group of creditors who had previously sought and been granted a stay, conditioned on the posting of a sizable bond of $1.3 billion.  In requesting the stay, the creditors had argued to this Court that in the absence of a stay, they would suffer irreparable harm, because their appeal would be rendered equitably moot.  After declining to post the $1.3 billion bond, which resulted in the confirmed plan's becoming effective, the creditors nevertheless claimed their appeal was **not** equitably moot.  Judge Scheindlin held the creditors to their prior representation.  *Id.* at 92-93.

The Second Circuit applied judicial estoppel in *Maxwell Communications Corp. v. Societe Generale (In re Maxwell Communications Corp.)*, 93 F.3d 1036, 1045 (2d Cir. 1996).  The debtor at the confirmation hearing in the bankruptcy court, in seeking to confirm its plan and overcome objections, asserted that its plan did not mandate the use of U.S. substantive law in a collateral dispute with adversaries.  Then, after the plan was confirmed, the debtor tried to change its position and argue the opposite, i.e. that U.S. substantive law was mandated and did bar its adversaries' claims.  The Second Circuit held this change in position was barred by judicial estoppel.

### (2) Representations About Lionel's Prospering in Bankruptcy

Lionel repeatedly told to the court below that it was continuing to prosper during bankruptcy.  See pp. 7-9 above.  Lionel made these representations for the purpose of extending its statutory period of "exclusivity."  In each instance, the court extended Lionel's period of

24

"exclusivity," continuously from November 2004 through the present order on appeal. Then, when it suited its purpose, Lionel turned around and made completely contradictory representations on June 27, 2007 at the hearing on the estimation motion.

These contradictions could not be more stark or inconsistent. In February 2007, to extend exclusivity, Lionel told the court below "its financial condition continued to improve," and showed a "marked improvement." (A224). **The debtors expect their business to continue to grow in 2007."** (*Id.*) (emphasis supplied). Key to this success is that Mr. Calabrese, the CEO, had, since his arrival in September, 2004, formed a dedicated team of management and staff. Mr. Calabrese had, for the past three years, had a "core group of dedicated senior management and sales staff." (*Id.*) This "dedicated staff" had "effectively and materially improved operational and financial performance." (*Id.*). This dedicated staff had "improved customer relations", improved "manufacturing and marketing sales" and improved "the introduction of new products that expand beyond the core hobby business." (*Id.*). Lionel touted that it had been able to enter into new trademarket license agreements, including with NASCAR. (A225). And Lionel had entered into new "marketing, sales and licensing agreements" with its major supplier, Sanda Kan Industrial, which had "enhanced profitability and expanded business performance." (A225). Lionel was granted its extension of exclusivity.

In June, 2007, a little over four months later, when Lionel sought to estimate and extinguish the trade secrets lawsuit, there had been a sea change, and all was gloom and doom since Lionel entered bankruptcy in 2004. Instead of this "dedicated" team of senior staff and sales staff, the court was told that since 2004 the beleaguered Mr. Calabrese had "lost, through resignation" key employees, including "three to five senior employees" (A581). From 2004 to 2007, Mr. Calabrese had been "unable to attract talented and experienced people," (A581), or people who would "fully commit" to Lionel (A582). Lionel had no "head of mass sales" and no "head of product

25

development" (A582), although just four months earlier, those two areas had been supposedly

expanding commendably.  Now, many potential mass marketing customers had "flat out refused to

deal with Lionel while it's in bankruptcy" (A579), even though this same mass market segment had

been expanding merrily in February.  Mr. Calabrese and his key lieutenant were themselves

suddenly in danger of leaving – their own "dedication" had apparently dissolved in four months.

(A582-583).  And the key supplier from February, Sanda Kan, was now nowhere to be found

because the bankruptcy (A579).  Lionel's business was teetering on the brink, requiring the court to

"estimate" MTH's liability.

To compare the factual assertions from February, 2007 at A223-225 with those from June,

2007 at A576-584 is to realize why the doctrine of judicial estoppel was established.  Lionel is

simply talking out of both sides of its mouth to the court, in each case trying to – and succeeding in

– obtaining a ruling it wanted.  The court below, in making the ruling at issue, relied upon the June

2007 representations, when it should instead have employed judicial estoppel as to them.

The court below wrote:

> In addition, the prolonged chapter 11 cases have had a negative effect
> on the Debtors' relationships with its employees. Mr. Calabrese
> testified that he has lost through resignation several key employees,
> including several senior employees with 20 odd years of experience in
> the product development area as well as the head of hobby sales. Mr.
> Calabrese testified further that although the company has several
> management positions open, including the head of mass sales, head of
> product development and head of business affairs, it has been
> extremely difficult to attract talented and experienced people under
> the current circumstances. Mr. Calabrese himself is laboring under a
> contract that expires at the end of this year.

Opinion, p. 7.  In so doing, the court below erred.

These kind of self-interested factual contradictions are precisely what led the Second

Circuit, this Court, and the court below itself in another case, to invoke judicial estoppel.  *Mulvaney*

*Mechanical*, 288 F.3d at 504; *accord Wight v. Bankamerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000);

26

*AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir. 1996);

*Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.)*, 301 B.R. 801, 806 (Bankr. S.D.N.Y.

2003); *Bethlehem Steel Corp. v. BP Energy Co. (In re Bethlehem Steel Corp.)*, 291 B.R. 260, 265

(Bankr. S.D.N.Y. 2003) (Lifland, J.).[10]  Here, the court below committed error by refusing to invoke

judicial estoppel to bar these statements.

### (3) Representations That The Forum Selection Clause Requires Trial in Michigan

There is a third facet of judicial estoppel in this case.  In settling prior antitrust litigation

with MTH, Lionel bargained for and entered into a forum selection clause.  That provided in

pertinent part:

> MTH Entities agree that until December 31, 2005, any actions
> brought by MTH Entities against Lionel and Affiliates…will be
> brought in the Courts of the State of Michigan or the Federal Court
> located in the Eastern District of Michigan.

A249-52.  The present lawsuit that Lionel now wants to "estimate" was commenced in April, 2000,

and is subject to this agreement.

Lionel represented that this was a valid and enforceable contract, enforced the terms of this

agreement, and benefited thereby.  MTH originally began its lawsuit for theft of trade secrets in the

United States District Court for Maryland, where it is headquartered.  Lionel invoked the above

contract and had the action transferred to the United States District Court for the Eastern District of

Michigan, where Lionel is headquartered.

As a result of that, Michigan choice of law rules applied, and under those rules Michigan's

substantive law, including Michigan's version of the Uniform Trade Secrets Act, supplied the

---

[10] In *Bethlehem Steel*, for example, the debtors successfully obtained an order to maintain utility
service by representing that they would pay the undisputed bills when rendered.  They subsequently
obtained an order rejecting the utility contracts, retroactive to the petition date.  Nevertheless, they
were judicially and equitably estopped from suing to recover alleged overpayments, based upon
their prior representations.

controlling substantive law.  In contrast, if the case had stayed in Maryland,  Maryland's choice of law rules would have applied, and would have dictated using  Maryland substantive law and Maryland's version of the Uniform Trade Secrets Act.[11]

Lionel benefited from this clause enormously in this lawsuit.  The Michigan jury returned a verdict that Lionel was jointly and severally liable with its co-defendant for the harm done in this intentional tort.  Under Maryland law, there is no apportionment of damages among joint tortfeasors for intentional torts.  *Hepburn ex rel. Hepburn v. Athelas Institute, Inc*., 324 F. Supp. 2d 752, 757 (D. Md. 2004).

However, Lionel successfully convinced the Sixth Circuit that Michigan substantive law required the jury at the trial to apportion the percentage of damages caused by Lionel and by Korea Brass, and because this was not done, that a new trial was needed.  *See* 472 F.3d at 414.  As a result, the $38.6 million verdict was vacated, and the case remanded for a new trial.  At a retrial in the Federal District Court in Michigan, MTH will be required to seek apportionment of damages, and Lionel will be able to argue that it had a small role in the theft of trade secrets, compared with the actions of its co-defendant, Korea Brass.  Lionel has already made clear that it intends to make this argument.  See A242 and A510 ¶27.

Secondly, Michigan's version of the Uniform Trade Secrets Act eliminates punitive damages.  Maryland's version of the Uniform Trade Secrets Act retains punitive damages.  In this case, the jury found that Lionel's conduct was "willful and malicious," i.e. there was a factual record basis for the imposition of punitive damages, but Lionel was insulated from a judgment for punitive damages under Michigan law.

---

[11] Maryland's choice of law rules choose the substantive law of the "place where the injury occurred."  *U.S. v. St. Louis University*, 336 F.3d 294, 300 (4th Cir. 2003).  Here, that is Maryland, where MTH is headquartered, its assets are located, it had to lay off dozens of workers, and has lost about $9 million per year in profits.

28

Lionel also benefited because it was able to try the case in its "hometown," where its corporate officers and employees resided, and where its attorneys were located, a great savings and convenience for Lionel.

However, having invoked this forum selection clause for its benefit, Lionel then suddenly switched its position and told the court below that the very same forum selection clause did **not** require retrial in Michigan. Why? In Lionel's words, here is the reason:

> By its own terms, the forum selection clause is not applicable to the Estimation Motion. First, the forum selection clause was only operative through December 31, 2005. The Debtors filed the Estimation Motion commencing a contested matter on June 1, 2007 – seventeen months after the forum selection clause had terminated in accordance with its terms.
>
> Second, MTH's allegation is predicated on the flawed assumption that the Estimation Motion and the Trade Secrets Case are one and the same. That is simply not correct. The Estimation Motion is a contested matter commenced by Lionel in accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure. The Trade Secrets Case was commenced by MTH's filing of a complaint in the Michigan District Court [sic]. While both the Estimation Motion and the Trade Secrets Case seek to resolve the Trade Secrets Damages Claims, they are entirely separate and distinct proceedings.

A448.

This is sheer sophistry. The Sixth Circuit has remanded for retrial the trade secrets lawsuit which was commenced in April, 2000. Lionel seeks to "estimate" that lawsuit. To pretend that a "new" action commenced on June 1, 2007 when Lionel filed its estimation motion is ludicrous.[12]

Lionel must be held to its representation that this trade secrets case requires trial in the Eastern District of Michigan, just as the Supreme Court held that New Hampshire was estopped from repudiating a contract it had entered into, in *New Hampshire v. Maine, supra*.

---

[12] Even under Lionel's strained logic, it seeks to estimate a claim that MTH filed in May, 2005. A38.1-38.6. That date is before the forum selection expiration. It is the date of the claim, not Lionel's estimation motion, that would control.

**(4) Representations That Theft of Trade Secrets Involves Irreparable Harm**

As shown in Argument C directly below, pp. 31-33, the "estimation" proceeding that Lionel sought and has received is incapable of awarding any permanent injunctive relief. Yet that relief is a key facet of the relief ordered by the Federal District Court in Michigan, and to be sought in a retrial of this case.

Lionel has represented to the court below that theft of trade secrets involves irreparable harm, warranting injunctive relief. The circumstance was Lionel's discovery that two of its former employees, including its former chief engineer (Robert Grubba, who also orchestrated the theft of MTH's trade secrets), had stolen Lionel's own trade secrets and given them to another company, K-Line. Lionel sued these employees and K-Line, and won injunctive and other relief which put K-Line out of business. In briefs submitted to the court below, Lionel stated:

> [O]nce Lionel has shown Defendants have taken its trade secrets, that loss "cannot be measured in money damages," for "[a] trade secret once lost is, of course, lost forever." *FMC Corporation v. Taiwan Tainan Giant Industrial Co., Ltd.*, 730 F.2d 61, 63 (2d Cir. 1984) (other citations omitted). [L]oss of trade secrets is not measurable in terms of money damages and is thus considered irreparable harm.
>
> …[U]nless Defendants are enjoined, [Lionel] will continue to lose a significant competitive advantage that cannot be calculated in monetary damage.
>
> [T]he case law recognizes, as discussed above, that money damages cannot compensate a defendant for misappropriation of its trade secrets.

A785-790. These statements judicially estop Lionel from seeking "estimation" in the present case, because estimation by definition cannot encompass injunctive relief.

For all of the above reasons, the court below erred by not employing judicial estoppel against Lionel's motion for estimation.

### C.  An "Estimation" Proceeding Cannot Enter a Permanent Injunction

The court below erred because an estimation proceeding under 11 U.S.C. §502(c) is powerless to enter a permanent injunction, a critical facet of the relief at issue in the retrial.  The court below was presented with this argument, but declined to address it in its opinion.

On November 1, 2004, Judge O'Meara entered a permanent injunction against Lionel's using the stolen blueprints, or tooling made from those blueprints, to make 20 different engines. (Ex. E hereto.)  Judge O'Meara did so based on the jury's finding of June 7, 2004 that Lionel and its co-defendant had engaged in massive theft of MTH trade secrets.  In considering equitable relief, the Federal Court must give effect to the jury's determination of facts to protect the Seventh Amendment.  "When both legal and equitable issues are presented in a single case, a jury should determine the issues common to both claims," *Perez-Serrano v. DeLeon-Velez*, 868 F.2d 30 (1st Cir.1989).  *See* 18 Wright & Miller, FEDERAL PRACTICE & PROCEDURE, §4418, p. 472 n. 22 ("…determination of common issues by the jury is binding on the judge in addressing the questions of equitable relief.")

When the Sixth Circuit vacated the jury verdict and remanded for a new trial, it also automatically vacated the permanent injunction, and remanded for consideration of its re-entry in light of the factual determinations the jury would make on retrial.  472 F.3d at 415.

However, the estimation statute which the bankruptcy court has invoked does not permit or provide for the entry of any permanent injunctive relief.  It provides, rather, that:

> (c) There shall be estimated for purpose of allowance under this section--
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case;
>
> (2) any right to payment arising from a right to an equitable remedy for breach of performance.

31

11 U.S.C. §502(c).  Hence, a "claim" for money damages can be estimated.  So can an "equitable

remedy for breach of performance" if it can be reduced to a right for payment.  Breach of

performance is a contract remedy.  It has nothing to do with theft of trade secrets at issue here.

The court below wrote:

> This argument presupposes a finding of liability on the part of Lionel.
> When, and if, MTH's Trade Secrets Damages Claim is estimated
> above $0, then a determination will be made if MTH's request for an
> injunction against future misappropriation can be projected into a
> monetary award.

Opinion, p. 10.

This is error.  11 U.S.C. §502(c) does not provide for this relief – rather the estimation

statute is limited to payment for an equitable remedy of "breach of performance."  In any event

"projecting" a monetary award is very different than entering an injunction which MTH has sought

and to which it is entitled.

The permanent injunction sought here prevents one business competitor from continuing to

misuse stolen trade secrets.  This remedy is specifically provided for in the Uniform Trade Secrets

Act under which this case was tried, and under which the Sixth Circuit ordered it to be retried.  *See*

Michigan Statutes, M.C.L.A. 445.1903.

Therefore, the court below's estimation procedure can, at best, enter partial and incomplete

relief, for money damages.  Entering a permanent injunction for misappropriation of trade secrets of

a business competitor is outside the scope of an estimation proceeding.  Hence, the court below

would have to, in any event, lift the automatic stay to permit the United States District Court for the

Eastern District of Michigan to make findings as to whether to re-enter a permanent injunction.  An

estimation proceeding would therefore itself cause duplication and undue delay, not prevent it.  Two

separate judges – the judge below, and Judge O'Meara – would have to hear the evidence of

32

misappropriation and make factual findings, one regarding estimation, the other regarding entry of a permanent injunction.

In contrast, if this case is re-tried before a jury in the Eastern District of Michigan, factual findings are only made **once:** by that jury. Those factual findings are then binding on the Federal District Judge in deciding whether or not the entry of permanent injunctive relief is warranted. Therefore, the court below erred in concluding that without estimation there would be "undue delay." To the contrary, estimation would be the cause of undue delay, not its remedy.

### D. The Estimation Power Should Not Be Construed to Permit a Solvent Debtor To Strip MTH of the Constitutional Rights MTH Exercised Prior to Lionel's Bankruptcy

"Estimation" is being used in this case by Lionel solely as a device to launder away MTH's rights to a federal jury and Article III judge on retrial, i.e. to prevent MTH from having an actual trial, conducted in accordance with the Federal Rules of Evidence, at which witnesses appear before the jury and the jury renders a verdict. Estimation, as applied to the case at bar, is being used to deprive MTH of constitutional rights, namely its Seventh Amendment right to jury trial, and its Fifth Amendment right to due process, and its Article III right to a judge who may employ the full judicial power of the United States, including by entering and enforcing permanent injunctions.

The Sixth Circuit remand of December, 2006 is explicit: it "REMAND[ed] this case to the district court for further proceedings consistent with this opinion." 472 F.3d at 415. The court below, in employing the estimation statute for the benefit of a solvent debtor, has failed to give proper deference to the mandate of the Sixth Circuit to retry the case in Federal District Court. No case cited by the court below or by Lionel has sanctioned using estimation in this procedural posture. It is a familiar principle, and certainly applicable in bankruptcy, that a court should avoid a construction of a statute that raises serious Constitutional issues. *United States v. Security Indus. Bank*, 459 U.S. 70, 78 (1982). The employment of the estimation power in the present case clearly presents serious Constitutional issues.

33

The Seventh Amendment to the U.S. Constitution provides:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

The Supreme Court has held that this right applies in bankruptcy proceedings, provided the

claim at issue is "legal" in nature:

> We have consistently interpreted the phrase "Suits at common law" to refer to "suits in which *legal* rights were to be ascertained and determined...
>
> ….
> It may be that providing jury trials in some [bankruptcy proceedings]...would impede swift resolution of bankruptcy proceedings and increase the expense of Chapter 11 reorganizations. But these considerations are insufficient to overcome the clear command of the Seventh Amendment. [citations omitted]. The fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution.

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 63 (1989).

One of the chief Senate sponsors of the 1984 revisions to the bankruptcy code, Senator

Hefflin, explained on the Senate floor that:

> Congress never intended that the filing of a bankruptcy petition by a debtor act as an escape hatch from jury trials. Thus, where a debtor, creditor, or noncreditor third party would have had a right to a jury trial on an issue of fact pursuant to Federal or State law absent application of the bankruptcy laws, this amendment ensures that such rights remain intact. This is true whether or not an entity requesting a jury trial has filed a proof of claim with the bankruptcy court.

130 Cong. Rec. S7619 (daily ed. June 19, 1984).

The Second Circuit has held that the right to jury trials applies to "core" bankruptcy

proceedings, as well as "non-core" proceedings. *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1400 (2d

Cir. 1990), *vacated* 498 U.S. 964 (1990), *opinion reinstated In re Ben Cooper, Inc.*, 924 F.2d 36

(2d Cir. 1991), *cert. den.*, 500 U.S. 928 (1991). As *Ben Cooper* emphasized, the relevant inquiry

34

under *Granfinanciera* is whether the underlying proceeding is "legal" (as opposed to "equitable") in

nature.  If so, then a jury trial is mandated:

> The conclusion that 'in an ordinary tort action…the right of trial by
> jury is guaranteed by the Constitution, *United States v. Fotopulos*, 180
> F.2d 631, 634 (9th Cir. 1950) is so obvious that it hardly needs
> belaboring.

896 F.2d at 1402.

In *Granfinanciera, supra*, a fraudulent transfer case, the Supreme Court held that a

defendant in an avoidance action has the right to a jury trial when the relief sought is legal (such as

a monetary judgment) and the defendant has not filed a proof of claim in the underlying bankruptcy

case. In *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990), the Court recognized that the right to jury

trial found in *Granfinanciera* applied in preference actions as well, but found no right to jury trial

when the defendant had voluntarily filed a proof of claim.

The court below found that MTH waived its right to jury trial by filing a proof of claim in

bankruptcy court.  "[W]hen a bankruptcy creditor files a proof of claim, it submits itself to the

bankruptcy court's equitable powers and thereby waives its right to a jury trial."  Opinion, p. 11,

*See S.G. Phillips Constructors, Inc. v. City of Burlington,* 45 F.3d 702, 704 (2d Cir. 1995) as an

example.  This general rule is inapplicable to the present case for two principal reasons.

First, Lionel is barred by judicial estoppel from benefiting from such a ruling because Lionel

represented to the Sixth Circuit that there is a constitutional right to a federal jury retrial **after** MTH

had filed its claim form.  See pp. 22-24 above.

Second, and more important, cases like *Phillips* are not germane here – where a Court of

Appeals has remanded a pending case for retrial before a federal jury, and where any "claim form"

was required simply to preserve that right to retrial.  In *Phillips*, the creditor City of Burlington had

filed a claim in state court, but it had not reached trial or judgment, when Phillips, a construction

manager who had contracted to repair Burlington's wastewater treatment, filed for bankruptcy. At

35

that point, the City of Burlington had a choice: to move to lift the automatic stay to continue the state court litigation, or to voluntarily file a claim in bankruptcy court for the claimed amount. When a putative judgment creditor does the former, it has **not** submitted itself to bankruptcy court jurisdiction. *See Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159 (9th Cir. 1986). In contrast, when the putative creditor voluntarily files a claim and immerses itself in the bankruptcy, it is deemed to have waived objection to bankruptcy court jurisdiction. *Phillips*, *supra*.

In the case at bar, there was nothing "voluntary" about MTH's actions in filing a claim in bankruptcy court. It was Lionel who hauled MTH into bankruptcy court. Lionel's opening schedule listed MTH as a judgment creditor with a judgment of $38.6 million. A7. In May, 2005, MTH was forced to file a *pro forma* proof of claim in the court below, in order to protect its judgment. The claim form attached the judgment to it. A38.1-38.6. If MTH had not filed this, and the Sixth Circuit had affirmed the judgment on appeal, MTH would have lost all rights to that judgment. Conversely, if, as happened, the 6th Circuit ordered a new trial, MTH would have lost its right to a retrial. To preserve any rights in its lawsuit against Lionel, MTH was required to file a proof of claim before this Court's bar order date.[13]

---

[13] Under the Bankruptcy Code, an allowed claim is a prerequisite to distribution. *See* 11 U.S.C. § 502. A timely claim must be filed to be allowed. 11 U.S.C. § 501; FED. R. BANKR. P. 3002(a). The Bankruptcy Rules provide for the court to fix a deadline for filing claims in chapter 11 cases. FED. R. BANKR. P. 3003(c)(3), and is "an integral part of the reorganization process." *First Fidelity Bank v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991). Absent excusable neglect, claims held by claimants with proper notice of the deadline must be filed within such deadline. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 382-83 (1993). This deadline is strictly enforced. *Midland Cogeneration Venture Ltd. Partnership v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 117 (2d Cir. 2005). As the Supreme Court observed: "Under the Bankruptcy Code proof of claims must be presented to the Bankruptcy Court for administration, **or be lost when a plan is confirmed**." *NLRB v. Bildisco*, 465 U.S. 513, 529 (1985) (emphasis supplied). Indeed, the claims bar order in this case explicitly provides at pages 3-4 that the failure to file a claim required to be filed would extinguish MTH's rights. Docket No. 209.

Moreover, MTH did not delay in seeking to lift the automatic stay (as did the creditor in *Phillips*, who, the Second Circuit noted, waited ten months). Quite to the contrary. MTH and Lionel immediately stipulated on December 2, 2004 to lift the automatic stay. Ex. B. That lifting was effective from December 2, 2004 continuously through June 15, 2007, when the Sixth Circuit issued its mandate for retrial. On June 8, 2007, a week before the lifting expired, MTH moved to continue to lift the automatic stay to retry the case pursuant to the Sixth Circuit mandate, which was about to issue. A253-262. Hence, there is an unbroken line of MTH's efforts to lift the automatic stay to litigate this case in the Sixth Circuit. This is analogous to what the litigant did in *Castlerock, supra*, where it was deemed to have filed only a "defensive" claim and not to have submitted itself to bankruptcy court jurisdiction. MTH did not "voluntarily" submit itself. If the word "voluntary" can be used to describe Lionel bringing MTH into the bankruptcy court, as it clearly did, and forcing MTH to file a claim defensively, under penalty of losing the entire judgment it had secured, then there is no further meaning or content to the word "voluntary."

Any waiver of constitutional rights must be voluntarily, intelligently, and knowingly made. *See Fuentes v. Shevin*, 407 U.S. 67, 94-95 (1972); *Brady v. United States*, 397 U.S. 742, 748 (1970). The Supreme Court consistently has held that courts must indulge in a presumption against waiver of the Seventh Amendment right to a jury trial. *See Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937) ( "as the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver"). *See also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959). The Second Circuit has held that waiver of the Constitutional right to a jury trial is not found lightly. "The right to a jury trial is 'fundamental'…and waiver is not lightly inferred." *Gargoyle v. Delsole*, 769 F.2d 77, 79 (2d Cir. 1985).

To find a waiver in the present case – or to find that MTH voluntarily submitted itself to the "equity" jurisdiction and thereby surrendered its right to retrial by jury – would be to convert this

bankruptcy proceeding into a charade which had one, and only one, purpose: to enable Lionel to eliminate the Constitutional rights of MTH, in order to gain an enormous procedural advantage in civil litigation.  This is not, and never has been, the legitimate purpose of bankruptcy.  To the contrary, the use of the estimation power in a case in which the debtor is solvent and able to pay its creditors in full, is to invert the "absolute priority rule," which is supposed to place the entitlements of creditors ahead of those of equity holders.  *See Bank of America Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 444-45 (1999).

As a result, the use of the estimation power in the present case raises significant Constitutional questions.  This Court must therefore construe the estimation statute to avoid these serious issues.  *Security Indus. Bank, supra,* 459 U.S. at 78.  The proper way to construe the statute, and to give appropriate deference to the command of the Sixth Circuit Court of Appeals, is to hold that the mandated retrial before an Article III judge and jury does not constitute "undue delay" in the administration of this solvent estate.

### E.  The Court Below Erred By Not Addressing the Legal Requirements for Lifting the Automatic Stay

What prevents MTH from implementing the Sixth Circuit's mandate for a retrial is the automatic stay of section 362(a) of the Bankruptcy Code.  As set forth above, that stay had been consensually lifted from December 2, 2004, through issuance of the Sixth Circuit mandate on June 15, 2007.  However, the bankruptcy court denied MTH's motion to continue the lifting of that stay for retrial, solely because it granted Lionel's motion to estimate.  Thus, the bankruptcy court  kept the automatic stay in place solely to enforce its determination to estimate.  In doing so, the bankruptcy court ignored the well established principle that "the automatic stay is a shield not a sword."  *In re Briarpatch Film Corp.*, 281 B.R. 820, 834 (Bankr. S.D.N.Y. 2002); *accord Bernstein v. IDT Corp.*, 78 B.R. 275, 281 (S.D.N.Y. 1987) (Weinfeld, J.); *see Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1168 (2d Cir. 1979) ("We . . . must be cautious to avoid a decision which could

38

convert [the predecessor to section 362] from a shield into a weapon.")  By maintaining the stay and

ordering estimation, the bankruptcy court indeed improperly converted a debtor's shield into a

debtor's weapon.

The court below also committed legal error by declining to address the factors articulated by

the Second Circuit that govern MTH's motion to lift the automatic bankruptcy stay to permit retrial

of this case in Federal District Court.  Those are referred to by shorthand as the "Sonnax Factors",

after the leading decision *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus.,*

*Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).  A consideration of those factors demonstrates that

MTH's motion should have been granted.

MTH's request to essentially continue lifting of the stay to permit the retrial ordered by the

Sixth Circuit is governed by section 362(d)(1) of the Bankruptcy Code, which provides:

> (d)  On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided in
> subsection (a) of this section, such as by terminating, annulling,
> modifying, or conditioning such stay –
>
> > (1)  for cause, including lack of adequate
> > protection of an interest in property of such party in
> > interest.

11 U.S.C. § 362(d)(1).  "Cause" in this provision is not defined.  Nevertheless, the legislative

history supplies a relevant observation.  The report of the House Judiciary Committees concerning

the Bankruptcy Code states:

> A desire to permit an action to proceed to completion in another
> tribunal may provide another cause.

H.R. REP. NO. 595, 95th Cong., 1st Sess. 343 (1977).  Both the reports of the House and Senate

Judiciary Committees also state:

> Nevertheless, it will often be more appropriate to permit proceedings
> to continue in their place of origin, when no prejudice to the
> bankruptcy estate will result, in order to leave the parties to their

39

> chosen forum and relieve the bankruptcy court from many duties that
> may be handled elsewhere.

S. REP. NO. 989, 95th Cong., 2d Sess. 50 (1978); H.R. REP. NO. 595, at 341.

When, as here, a motion to lift the stay is made to pursue litigation in a non-bankruptcy

forum, the courts in the Second Circuit use the so-called *Sonnax* factors.  These are:

> (1) whether relief would result in a partial or complete resolution of
> the issues; (2) lack of any connection with or interference with the
> bankruptcy case; (3) whether the other proceeding involves the debtor
> as a fiduciary; (4) whether a specialized tribunal with the necessary
> experience has been established to hear the cause of action; (5)
> whether the debtor's insurer has assumed full responsibility for
> defending it; (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests
> of other creditors; (8) whether the judgment claim arising from the
> other action is subject to equitable subordination; (9) whether
> movant's success in the other proceeding would result in a judicial
> lien avoidable by the debtor; (10) the interests of judicial economy
> and the expeditious and economical resolution of litigation; (11)
> whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286

(2d Cir. 1990). Accord,  *Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 n.1

(2d Cir. 2002); *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999).  It is frequently

said that not all of these factors are relevant to each stay-relief motion.  *Bogdanovich*, 292 F.3d at

110; *Mazzeo*, 167 F.3d at 143.

One of the well recognized grounds for granting relief from the stay is that the case in the

non-bankruptcy forum is ready for trial.  Indeed, "[w]here the stayed non-bankruptcy litigation has

reached an advanced stage, courts have shown a willingness to lift the stay to allow the litigation to

proceed."  *International Bus. Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage*

*& Van Co.)*, 938 F.2d 731, 737 (7th Cir. 1991); s*ee Castlerock Properties*, 781 F.2d at 163 ("a state

court trial is about to take place involving the same issues"); *Holtkamp v. Littlefield (In re*

*Holtkamp)*, 669 F.2d 505, 509 (7th Cir. 1982) ("the trial date had been set and witnesses . . .

40

subpoenaed"); 3 L. KING, COLLIER ON BANKRUPTCY ¶ 362.07[3][a] (15th rev. ed. 2002) ("And relief also may be granted when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial.").

That reasoning applies with special force here: not only is the case in an "advanced" stage, but there has already been one trial before Judge O'Meara, as well as extensive motion practice and pretrial proceedings before him in the four years prior to trial. Judge O'Meara is intimately familiar with this case. And the subsequent Sixth Circuit decision has clarified many of the issues for the retrial, leading to even more judicial economy in the retrial.

The case of *Crown Heights Jewish Community Council, Inc. v. Fischer (In re Fischer)*, 202 B.R. 341 (E.D.N.Y. 1996) is illustrative. The district court, on withdrawal of the reference, granted stay relief to permit a RICO action to proceed in a federal district court where "the action has been pending for more than four years, discovery is nearing its completion, and the Court has devoted substantial resources . . . in holding hearings, conducting conferences and deciding motions." *Id.* at 355. This applies with even greater force here.

A similar analysis was employed by the District Court in *In re Laventhol & Horwath*, 139 B.R. 109, 116-17 (S.D.N.Y. 1992), where the debtor filed for bankruptcy protection in this court in the middle of a federal securities law and RICO trial court, and the automatic stay was lifted to permit continuation of the litigation against the debtor in the North Carolina District Court. The court stated:

> Indeed, we observe that the history of this litigation would warrant the Bankruptcy Court's lifting the stay . . . for the explicit purpose of allowing the entire case to be heard and concluded before Judge McMillan in North Carolina. . . .
>
> The [*Sonnax*] factors that apply in this case most clearly are 1) the interests of judicial economy and the expeditious and economical resolution of litigation; and 2) the party's readiness for trial in the other proceeding. Judge McMillan's extensive commitment to and intimate knowledge of the case and the fact that the parties were ready

41

> a year ago to proceed, and did proceed, before Judge McMillan weigh
> heavily in favor of allowing the case to go forward in North Carolina.

*Id.* at 116-17 (footnotes omitted).

The  incremental cost in a jury trial in the Eastern District of Michigan over a non-jury trial

in the Southern District of New York is insufficient to amount to a legitimate claim of prejudice.

*Burger Boys, Inc. v. South St. Seaport Ltd. Partnership (In re Burger Boys, Inc.)*, 183 B.R. 682, 688

(S.D.N.Y. 1994).

Other *Sonnax* factors favor the lifting of the stay.  Factor (1) is complete resolution of the

issues.  Here, MTH seeks not only damages, but in addition, an injunction preventing the future use

of its misappropriated trade secrets.  The Eastern District of Michigan can grant complete relief, but

the court below cannot grant injunctive relief in the estimation proceeding it has ordered, Section C,

pp. 31-33 above.

Factor (2) is whether there is a lack of any connection to the bankruptcy case.  MTH's

underlying tort lawsuit is not connected factually or legally with any other matter in bankruptcy: it

was simply the bond requirement from that case that caused Lionel to seek bankruptcy protection, a

reason that no longer exists.  The theft of trade secrets lawsuit does not arise under the Bankruptcy

Code, nor does it pertain to how the bankruptcy case has been or should be conducted.

Consequently, this factor favors the lifting of the stay.

Factor (7) is prejudice to other creditors.  The trial of MTH's claim in the Eastern District of

Michigan, and the determination whether Lionel should be enjoined from using MTH's trade

secrets does not prejudice the rights of any of Lionel's other creditors, who will be paid in full.

Consequently, this factor favors the lifting of the stay.

Factor (8)  is whether the judgment is subject to equitable subordination.  No allegation has

been made that MTH has engaged in inequitable conduct that would subject its claim to equitable

subordination, such as misrepresentation or fraud, lack of good faith by a fiduciary, unjust

42

enrichment, or enrichment brought about by unconscionable, unjust or unfair conduct or double-dealing. *See Tese-Milner v. TPAC, LLC (In re Ticketplanet.com)*, 313 B.R. 46, 65 (Bankr. S.D.N.Y. 2004); *In re Adler, Coleman Clearing Corp.*, 277 B.R. 520, 563 (Bankr. S.D.N.Y. 2002). Moreover, MTH is not an insider, nor has MTH engaged in any type of conduct that would warrant equitable subordination, such as undercapitalization of the debtor, or the control or use of the debtor as a vehicle to benefit itself to the detriment of other creditors. *See In re Granite Partners, L.P.*, 210 B.R. 508, 514 (Bankr. S.D.N.Y. 1997); *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 841 (Bankr. S.D.N.Y. 1994). This factor favors relief from the automatic stay.

Factor (9) is whether the judgment would result in an avoidable judicial lien. MTH is not seeking to enforce any money judgment obtained in the Eastern District of Michigan. So long as the debtor's bankruptcy case is pending, whatever money judgment is obtained will be subject to distribution as an unsecured creditor in the bankruptcy case. This factor favors relief from the automatic stay.

Factor (12) is the impact of the stay and the balance of harms: It should be noted that Lionel's chapter 11 case is nearly three years old. A principal purpose of the automatic stay is to furnish the debtor with a "breathing spell" from its creditors. S. REP. NO. 989, at 54-55; H.R. REP. NO. 595, at 340. That purpose has been fulfilled. Lionel's business is stabilized and successful. At this stage of its chapter 11 case, Lionel would not be harmed by the determination of the trade secrets claim in another forum. *See Holtkamp*, 669 F.2d at 508-09; *Litton Sys., Inc. v. Frigitemp Corp. (In re Frigitemp Corp.)*, 8 B.R. 284, 289 (S.D.N.Y. 1981). Moreover, Lionel's headquarters are in Michigan, and Michigan is the more convenient forum for purposes of the availability of witnesses and documents. *See Blan v. Nachogdoches (In re Blan)*, 237 B.R. 737, 740 (8th Cir. B.A.P. 1999). Finally, a re-trial in the Eastern District of Michigan will preserve the parties' right

43

to a jury trial. For all these reasons, the balance of harms tips decidedly in favor of having the trade secrets case determined in the Eastern District of Michigan before a jury.

The court below erred as a matter of law in failing to consider or address any of the *Sonnax* factors. Consideration of those factors shows why MTH's motion to lift the automatic stay should have been granted.

## POINT II
## THE COURT ERRED IN EXTENDING EXCLUSIVITY TO LIONEL

Exclusivity is the procedure whereby only the debtor, and no one else, is permitted to propose a plan of reorganization. The Bankruptcy Code provides that the debtor has the exclusive right to file a plan for the first 120 days of bankruptcy. 11 U.S.C. §1121(a). After that, the court has the discretion to extend time period. However, the extensions can only be "for cause," pursuant to 11 U.S.C. §1121(d), and the debtor has the burden of proving that such an extension is warranted. *In re General Bearing Corp.*, 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992). Motions to extend exclusivity "are to be granted neither routinely nor cavalierly." *In re McClean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

Here, the court below extended exclusivity to Lionel four times, while waiting for the Sixth Circuit to rule. For the most part, MTH did not oppose those extensions. However, once the Sixth Circuit ruled, Lionel proposed a plan for reorganization that called for "estimating" MTH's trade secrets lawsuit rather than retrying it, and moreover estimating in amount that was "reasonable" and "satisfactory" to Lionel. Lionel sought a fifth extension of exclusivity to prevent MTH from submitting a competing plan. MTH opposed this fifth request, and indicated on the record concrete and feasible alternatives to Lionel's plan that MTH would be prepared to put forward if Lionel's exclusivity were ended. See pp. 14-15 above. In the order under review, the court below denied MTH the right to propose any competing plan, and extended to Lionel a fifth exclusivity period.

44

This was an abuse of discretion, especially where as here the court below did not so much as mention MTH's competing proposals.

MTH's proposals at A458-459 made sense, and therefore MTH should have been granted the right to formally propose them as plans of reorganization.  They would have provided that all creditors (except MTH) be immediately paid 100 cents on the dollar, plus interest, as Lionel's plan concedes it can do.  As to MTH's causes of action (for trade secret and patent infringement), they would be tried before juries, consistent with the Seventh Amendment.  Assuming MTH won either or both cases, the resulting verdict would not cause Lionel to have to re-enter bankruptcy.  In one proposal, MTH proposed an annual cap in Lionel's payout of any jury verdicts:  $5 million per year.  This is an amount that Lionel's documents indicate it can afford, based upon its current cash flow, its savings of professional fees from the bankruptcy ($10 million in 2 ½ years), and Lionel's projected increase in revenue post bankruptcy.

The alternative proposal would have sold Lionel, which would have yielded about $60 million net, based on valuations by Lionel's investment advisors.  ($110 million value compared with $62 total prepetition and post petition debt, p. 13 above).  This $60 million would have been escrowed, to pay any judgments to MTH, with the remainder going to Lionel's existing equity holders.

While a proposed sale of Lionel may seem at first blush a harsh remedy, the record evidence – ignored by the court below – is that Lionel's insiders were bent on selling the company to each other.  Pp. 13-14 above.  Hence, a "sale" of Lionel was the chosen course by Lionel's owners.  It is just that the $60 million in value would have benefited one group of Lionel insiders, with little or no payment to MTH, the competitor that Lionel wronged.  MTH's competing plan would have provided a measure of justice: the Lionel insiders would have gotten paid the surplus, after any amounts determined by juries to be owed to MTH had been satisfied.  This is how it should be.

45

Instead of permitting MTH to file a competing plan containing either or both of these provisions, the court below extended Lionel's period for exclusivity, permitting only Lionel's plan of reorganization to be considered. That plan proposes that Lionel can exit bankruptcy only if the bankruptcy judge estimates MTH's lawsuits in an amount that Lionel, in its sole discretion, deems to be "reasonably satisfactory." A152 at A-5.

This means that the bankruptcy judge who will perform the "estimation" has an inherent, institutional bias to "estimate" the trade secret liability and damages in a manner that is satisfactory to Lionel, in order to approve the plan. This places at least an implicit pressure on the bankruptcy court to estimate the damages in a low amount, to make sure they are "acceptable" to Lionel. In contrast, a federal jury is instructed to simply decide the case on its merits, without collateral regard to whether or not the defendant will find the amount of the verdict "satisfactory" to it.

For the foregoing reasons, the court below abused its discretion in refusing to permit MTH to file a competing plan, and in extending exclusivity to Lionel for a fifth time.

**POINT III**
**THE COURT BELOW ERRED IN EXTINGUISHING**
**MTH'S CLAIM FOR ATTORNEYS' FEES**

In the same order under appeal, the court below expunged MTH's claim for statutory attorneys fees in connection with the theft of trade secrets lawsuit. This was error. MTH's claim could be expunged, or disallowed in the language of 11 U.S.C. §502(b)(1), only to the extent the claim was "unenforceable against the debtor." But even the court below recognized that the claim for attorneys fees "stands on the same footing" as the trade secret claim itself, which was not expunged. Opinion, p. 13. A petition for attorneys fees had originally been filed in Federal District Court in Michigan after the trial, pursuant to MICH. COMP. LAWS § 443.1905, which permits plaintiff's claim where, as here, the jury determined there had been willful theft. MTH had to file a pro forma claim form in the court below to protect its right to those. In the order under appeal, the

46

court below first stated they were being "expunged without prejudice." (Opinion, p. 14, line 1).  But its conclusion held they were "expunged" (final sentence).  To the extent there is no prejudice to MTH seeking statutory attorney fees, including for time expended from April, 2000 to the present, in the event that MTH again prevails in proving theft of trade secrets, then MTH does not object to the order.  However, because of the Order's ambiguity, MTH seeks a ruling from this Court confirming this result, and reversing the court below to the extent it intended any other result.

## CONCLUSION

For all of the foregoing reasons, the decision of the court below should be reversed, and this Court should enter an order:

(1)     reversing the granting of Lionel's motion to estimate and the denial of MTH's motion to lift the automatic stay, and directing that the automatic stay be lifted to permit retrial of the trade secrets lawsuit in the United States District Court for the Eastern District of Michigan;

(2)     reversing the fifth extension of exclusivity to Lionel;

(3)     reversing the expunging of MTH's claim for attorneys' fees relating to the trade secret lawsuit, for consideration by the Federal District Court in connection with (1) above.

35862_7

Respectfully submitted,

Dated: September 20, 2007

Robert A. Swift
(motion for admission pro hac vice pending)
Robert J. LaRocca
(motion for admission pro hac vice pending)
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, Pennsylvania 19107
Telephone      (215) 238-1700
Facsimile      (215) 238-1968

Alec P. Ostrow (AO-3104)
STEVENS & LEE, P.C.
485 Madison Avenue
New York, New York 10022
Telephone      (212) 319-8500
Facsimile      (212) 319-8505

48

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                          Chapter 11

       Lionel L.L.C., et al.,                Case No. 04-17324

          Debtors,

-------------------------------------------------------------x

APPEARANCES:

SCHULTE ROTH & ZABEL LLP
Attorneys for the Debtors
and Debtors in Possession
919 Third Avenue
New York, New York 10022
(212) 756-2000
By: Adam C. Harris
Abbey Walsh
Adam L. Hirsch

KOHN, SWIFT, & GRAF, P.C.
Attorneys for Mike's Train House, Inc.
One South Broad Street
Suite 2100
Philadelphia, Pennsylvania 19107
(215) 238-1700
By: Robert A. Swift
Robert J. LaRocca

STEVENS & LEE, P.C.
Attorneys for Mike's Train House, Inc.
485 Madison Avenue
New York, New York 10022
(212) 319-8500
By: Alec P. Ostrow

HALPERIN BATTAGLIA RAICHT, LLP
Counsel to the Official Committee of
Unsecured Creditors of Lionel L.L.C.
555 Madison Avenue, 9th Floor
New York, New York 10022
(212) 765-9100
By: Alan D. Halperin
Robert D. Raicht

By: Burton R. Lifland,
United States Bankruptcy Judge

## AMENDED MEMORANDUM DECISION REGARDING CLAIMS OBJECTIONS, ESTIMATION PROCEDURES, STAY MODIFICATION AND EXTENSION OF EXCLUSIVITY

Before the Court is the motion of Lionel L.L.C. and Liontech Company ("Lionel" or the "Debtors") to estimate (the "Estimation Motion") proof of claim number 55 (the "Trade Secrets Damages Claim"), filed by Mike's Train House, Inc ("MTH"), pursuant to sections 502(b) and (c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the motion to expunge proof of claim numbers 54 (the "Interest Claim") and 56 (the "Legal Fees Claim") filed by MTH under section 502(b) of the Bankruptcy Code and Rule 3007 of the Bankruptcy Rules. Lionel has filed objections relating to all of the above referenced filed proofs of claim. MTH objects to the Estimation Motion and cross-moves to modify the stay and permit the litigation of the Trade Secrets Damages Claim to go forward in the District Court in the Eastern District of Michigan. MTH has also moved for an order (the "Deposition Motion") authorizing the taking of videotaped depositions of three potential witnesses.

Lionel also moves for an order granting a fifth extension of the exclusive period during which only Lionel may file a plan of reorganization and solicit acceptances thereof through October 16, 2007, and December 17, 2007, respectively MTH objects to a further extension. An evidentiary hearing commenced on June 27 and continued on August 2, 2007.

2

**Background**

Lionel is a well-known marketer of model train products, including steam and diesel engines, rolling stock, operating and non-operating accessories, track, transformers and electronic control devices. One of Lionel's main competitors is MTH. In 2000, MTH sued Lionel in the United States District Court for the Eastern District of Michigan (the "Michigan Court") for violating the Michigan Uniform Trade Secrets Act (the "Trade Secrets Litigation"). The suit was based on allegations that one of Lionel's former suppliers stole confidential design drawings from MTH's supplier and then used that information to design and build trains for Lionel. A trial was held and on June 9, 2004, the jury returned a verdict of $38,608,305.00 in MTH's favor. Lionel filed a motion, which was denied, for a new trial. Financially unable to post a bond to stay enforcement of the judgment pending appeal, Lionel commenced their voluntary chapter 11 cases on November 15, 2004.

On May 3, 2005, MTH filed the three proofs of claim against Lionel arising out of the Trade Secrets Litigation:[1] the Trade Secrets Damages Claim in the amount of $38,608,305.00; the Interest Claim, in the amount of $28,813.44 for interest accruing between the date of the MTH Judgment (November 3, 2004) and the Petition Date, and the Legal Fees Claim, in the amount of $3,499,433.57 for legal fees incurred in connection with the Trade Secrets Litigation.

After obtaining a modification of the automatic stay from this Court, Lionel appealed the verdict to the United States Court of Appeals for the Sixth Circuit. On December 14, 2006, the Sixth Circuit reversed the Michigan Court's denial of Lionel's

---

[1] MTH also filed claim number 53 alleging patent infringement claims relating to MTH's smoke patents in the amount of $17,467,449.06. The Debtors filed an objection to that claim but proceedings relating to that objection are stayed pursuant to a stipulation dated July 11, 2006.

3

motion for a new trial and vacated the MTH judgment.  MTH filed a Petition for Panel

Reconsideration and Suggestion for Rehearing *En Banc*, but the Sixth Circuit denied

MTH's petition on April 19, 2007.  On April 26, 2007, MTH asked the Sixth Circuit to

stay issuance of the mandate to allow MTH to file a petition for a writ of certiorari to the

United States Supreme Court.  The stay was granted on May 16, 2007.  On May 30,

2007, MTH filed a Motion to Vacate Stay of Mandate and for Issuance of Mandate.  On

June 15, 2007, the Sixth Circuit granted the motion and issued the mandate.

The Trade Secrets Damages Claim asserted by MTH was filed in a liquidated

dollar amount based upon the amount awarded to MTH in the MTH Judgment.  Due to

the Sixth Circuit's reversal of the MTH Judgment, the Trade Secrets Damages Claim is

now a disputed and unliquidated claim because the Sixth Circuit's decision does not

finally resolve the Trade Secrets Damages Case, but instead provides for the case to be

remanded back to the Michigan Court for a new trial consistent with the decision.

Therefore, the Debtors object to the Trade Secrets Damages Claim and request the entry

of an order authorizing the reclassification of such claim as disputed, contingent, and

unliquidated.  In addition, the Debtors contend that as long as the Trade Secrets Damages

Claim remains disputed and unliquidated, it will prevent the Debtors from confirming a

plan of reorganization.  Thus, in order to avoid the purported delay that would result if

the Debtors were required to retry the Trade Secrets Litigation in the Michigan Court and

await the final outcome of the litigation, the Debtors seek to have this Court estimate the

Trade Secrets Damages Claim pursuant to section 502(c) of the Bankruptcy Code.

Accordingly, the Debtors seek entry of an order (i) disallowing and expunging the Legal

Fees Claim and the Interest Claim, (ii) reclassifying the Trade Secrets Damages Claim as

4

disputed, contingent and unliquidated, (iii) setting procedures for, and scheduling a

hearing on, estimation of the Trade Secrets Damages Claim and (iv) extending

exclusivity to allow for the resolution or estimation of such claims.

**Discussion**

Section 502(c) of the Bankruptcy Code provides that:

(c) There shall be estimated for purpose of allowance under this section—

> (1) any contingent or unliquidated claim, the fixing
> or liquidation of which, as the case may be, would
> unduly delay the administration of the case;

11 U.S.C. § 502(c); *see Frito Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10

F.3d 944, 957 (2d Cir. 1993) ("A bankruptcy court must estimate 'any contingent or

unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly

delay the administration of the case.'"); *In re G-I Holdings, Inc.*, 2006 WL 2403531, *3

(Bankr. D.N.J. August 11, 2006) ("Section 502(c) of the Bankruptcy Code is drafted in

mandatory terms. That is, any contingent or unliquidated claim 'shall' be estimated so

long as the 'liquidation' of the particular claim would 'unduly delay the administration of

the case.'"); *In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986) ("This duty of the

bankruptcy court is mandatory, since the language of [section 502(c)] states 'shall'").

Thus, when the liquidation of a claim is premised on litigation pending in a non-

bankruptcy court, and the final outcome of the matter is not forthcoming, the bankruptcy

court should estimate the claim. *See Maxwell v. Seaman Furniture Company, Inc. (In re*

*Seaman's Furniture Co. of Union Square, Inc.)*, 160 B.R. 40, 42 (S.D.N.Y. 1993)

("Estimation is an expedient method for setting the amount of a claim that may receive a

distributive share of the estate."); *In re Apex Oil Co.*, 107 B.R. 189, 192 (Bankr. E.D. Mo.

5

1989) ("the key consideration in whether a bankruptcy court should estimate a claim pending in another forum is whether liquidation of that claim would unduly delay the debtor's Chapter 11 reorganization."); *In re Lane*, 68 B.R. at 611 (section 502(c) of the Bankruptcy Code requires the court to estimate any claim where failing to do so would unduly delay the administration of the case). A main goal of the Bankruptcy Code is to equitably distribute the debtor's assets among its creditors. Lengthy bankruptcy proceedings cause delayed distributions, which in turn, greatly devalue the claims of all creditors as they cannot use the assets until they receive them. *See In re Paramount Publix Corp.*, 8 F. Supp. 644, 646-47 (S.D.N.Y. 1934) ("Time is of the essence in bankruptcy administration. An early distribution of the bankrupt's assets among his creditors is imperative.

It is more than seven years since the Trade Secrets Litigation between Lionel and MTH commenced. The MTH Judgment was the impetus for the filing of these chapter 11 proceedings that have now been pending before this court for over two and a half years awaiting the outcome of the appeal. As with most chapter 11 proceedings, Lionel's status as a chapter 11 debtor has placed a strain on the company's management and employees, and their relationships with both customers and manufacturers. It has also materially affected Lionel's ability to expand its business beyond the pure "hobby" market. Mr. Calabrese, Lionel's president and CEO since September 2004, testified that he has been working diligently to develop Lionel's "mass" business such as co-branding opportunities with retailers such as Macy's, Toys-R-Us and Target. However, given the continued uncertainty surrounding Lionel's bankruptcy and the MTH claims, the willingness of the mass merchandisers to get involved in long term commitments with

Lionel is limited.[2]  Some retailers, such as Wal-Mart have "flat out refused to deal with Lionel while in bankruptcy."

In addition, the prolonged chapter 11 cases have had a negative effect on the Debtors' relationships with its employees. Mr. Calabrese testified that he has lost through resignation several key employees, including several senior employees with 20 odd years of experience in the product development area as well as the head of hobby sales. Mr. Calabrese testified further that although the company has several management positions open, including the head of mass sales, head of product development and head of business affairs, it has been extremely difficult to attract talented and experienced people under the current circumstances. Mr. Calabrese himself is laboring under a contract that expires at the end of this year.

Further, in the years since the Petition Date, Lionel has spent approximately $10 million dollars in total fees and expenses of which $5 million relates purely to the administration of the chapter 11 cases, including the company's attorneys and professionals, the committee's professionals, United States Trustee's fees and other similar fees.

Not long after the reversal of the Judgment by the Sixth Circuit, on May 21, 2007, the Debtors filed their Disclosure Statement and Joint Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code. The Plan proposes to leave all creditors of the Debtors' estates unimpaired by paying them in full, in cash, plus post-petition interest, on the effective date. One of the conditions precedent to confirmation of the Plan is that the Trade Secrets Damages Claim be settled, otherwise resolved or estimated by the

---

[2] For example, Lionel has been invited to participate in the Macy's parade but Macy's has expressed uncertainty about giving Lionel that slot given "what's going on with the bankruptcy and the long term issues regarding its viability."

Bankruptcy Court. Considering the enormous dollar amounts of the claims asserted by MTH (claims which MTH asserts could result in damages of between $60 and $70 million) in comparison to the rest of the claims and the assets of the Debtors' estates, the Debtors clearly cannot confirm the Plan if this Court cannot find it feasible without the liquidation of MTH's claims. *See eg., Sherman v. Harbin (In re Harbin)*, 2007 WL 1322389, *4 (9th Cir. May 8, 2007) (holding that in order to meet the feasibility requirement for confirmation of a plan under section 1129(a)(11) a court must evaluate "whether a potential future judgment may affect the debtor's ability to implement its plan."); *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir.1985) (estimation necessary for a determination of plan feasibility).

MTH contends there will not be an undue delay in the administration of these chapter 11 cases if the stay is modified to allow the case to be retried in the Michigan Court. That simply defies logic. An estimation proceeding in this Court can be conducted within a very short period of time versus a full-blown jury trial in Michigan, which is not even calendared. In the first trial, the parties engaged in 18 days of trial resulting in the jury verdict in June 2004. Post-trial motions and briefing were not concluded until November 2004, when Lionel's motion for a new trial was denied and judgment was finally entered. The appeal to the Sixth Circuit, including MTH's Petition for Reconsideration, consumed an additional two years and three months. Under the procedures proposed by Lionel in connection with the Estimation Motion, estimation of the Trade Secrets Damages Claim could be concluded by the end of August 2007.

MTH also argues that any delay in retrying the case in Michigan should not be an issue because Lionel can go ahead and confirm a plan without dealing with MTH's

claims which can proceed post-confirmation or simply dismiss the chapter 11 cases and pay all creditors other than MTH. This simplistic argument is unrealistic and does not even have cosmetic appeal. First, dismissal would result in the occurrence of events of default under the Debtors' DIP financing facilities, causing acceleration of approximately $45 million in obligations (and leaving the Debtors without working capital to run the business and all creditors at the mercy of the lenders' exercise of remedies), and second result in between $15 million and $20 million of pre- and postpetition obligations becoming immediately due and payable. Moreover, under the Plan, the Debtors intend to refinance these obligations through a new exit financing facility to replace its existing debtor in possession financing facilities, and new equity capital to pay all other allowed claims and exit costs. However, with the threat of $60 - $70 million in additional claims being asserted by MTH, the Debtors will have no access to the capital necessary to permit the payment of those obligations and/or the confirmation of a plan. Mr. Turkington, Lionel's CFO, also explained that based upon his experience as CFO after the MTH jury verdict entered in June 2004, that any dismissal of the chapter 11 cases with the specter of the MTH litgation continuing to hang over the head of Lionel would result in trade creditors, particularly manufacturers, constricting trade credit and even insisting on cash on delivery or cash in advance.

Even if the Debtors could get exit financing to confirm a plan prior to resolving MTH's claims, having MTH's claims ride through the bankruptcy without being discharged would not satisfy section 1129(a)(11) of the Bankruptcy Code. That section requires that "confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor...unless such liquidation or

reorganization is provided for in the plan." 11 U.S.C. § 1129(a)(11). A liquidation or

further reorganization contingency cannot realistically be provided for in a plan, when

neither the likelihood of an adverse judgment, nor the timing and amount of such a

judgment, can be predicted with any certainty. *See In re Harbin, supra.*

MTH also contends that its request for injunctive relief is not a "claim" capable of

estimation under Section 101(5)(a) of the Bankruptcy Code. This argument presupposes

a finding of liability on the part of Lionel. When, and if, MTH's Trade Secrets Damages

Claim is estimated above $0, then a determination will be made if MTH's request for an

injunction against future misappropriation can be projected into a monetary award.[3]

Accordingly, the Debtors' request to estimate the Trade Secrets Claim is granted and

MTH's motion to modify the stay to retry the case in the Michigan court is denied.

**Procedures**

Although the Bankruptcy Code does not explicitly detail procedures for

estimating claims, a Bankruptcy Court may use whichever method is best suited to the

circumstances. *Bittner v. Borne Chemical Co.*, 691 F.2d 134, 135 (3d Cir. 1982); *In re

Seaman's Furniture Company of Union Square, Inc.*, 160 BR at 41. In *In re Baldwin-

United Corp*, 55 B.R. 885, 889 (Bankr. S.D. Ohio 1985) the court utilized a procedure

akin to a summary trial where there was no jury, live testimony by one witness per party,

a discovery cutoff date, and only two days for the hearing. Many courts adhere to the

method set forth in the *Baldwin-United* case. *See e.g., In re MacDonald*, 128 B.R. 161,

166-67 (Bankr. W.D. Tex. 1991) (employing an abbreviated procedure practically the

same as *Baldwin-United* ); *In re Apex Oil Co.*, 92 B.R. 843 (Bankr. E.D. Mo.1988)

(utilizing a methodology analogous to *Baldwin-United); NLRB v. Greyhound Lines (In re*

---

[3] In fact, previously in this case, a similar injunction in favor of the Debtor was monetized.

*Eagle Bus Mfg.),* 158 B.R. 421 (D. Tex. 1993) (two-day summary trial); *DeGeorge Fin.*

*Corp. v. Novak (In re DeGeorge Fin. Corp.),* 2002 U.S. Dist. LEXIS 17621 (D. Conn.

2002) (one-day trial). Although this is not the only method of conducting the estimation

procedure (*see In re Nova Real Estate Inv. Trust,* 23 B.R. 62, 65 (Bankr. E.D. Va. 1982)),

a longer method, such as a full-blown trial on the merits, would "eviscerate the purpose

underlying Section 502(c)." *Baldwin-United,* 55 B.R. at 899. Moreover, a more time

consuming method would run counter to the "efficient administration of the bankrupt's

estate . . . " *Bittner,* 691 F.2d at 135. Furthermore, in estimating the value of a claim, the

Court of Appeals for the Second Circuit has stated that courts should make a "speedy and

rough estimation of [the] claims for purposes of determining [claimant's] voice in the

Chapter 11 proceedings . . ." *In re Chateaugay Corp.,* 944 F.2d 997, 1006 (2d Cir. 1991).

MTH complains that the estimation procedure proposed by the Debtors fails to

accord with fundamental notions of due process and deliberately tilts towards excluding

evidence supportive of MTH's claims. In general, the truncated trial process that can be

developed under 502(c) has been found to be consistent with the dictates of due process

of law. *See In re FRG, Inc.,* 121 B.R. 451, 456 (Bankr. D. Pa. 1990); *In re Apex Oil Co.,*

92 B.R. at 845-47; *In re Baldwin-United Corp.,* 55 B.R. at 899-902. In addition, when a

bankruptcy creditor files a proof of claim, it submits itself to the bankruptcy court's

equitable powers and thereby waives its right to a jury trial. *In re Trans Marketing* 117

F.3d 1417 (5th Cir. 1997) *citing Lagenkamp v. Culp,* 498 U.S. 42, 44 (1990); *First*

*Fidelity Bank, N.A. v. Hooker Investments, Inc. (In re Hooker Investments, Inc.),* 937

F.2d 833, 840 (2d Cir.1991) (rejecting creditor's argument that it should not be forced to

make the choice between filing a proof of claim and preserving its right to a jury trial).

However, as requested by MTH, I find that the procedures proposed by Lionel should be modified somewhat to provide for limited additional discovery and presentation time, the parameters of which shall be the subject of a chamber's conference to be scheduled. *See* 11 U.S.C. §105(d). Similarly, I find that MTH's Deposition Motion is, at best, premature and shall be addressed at the scheduling conference to review the proposed procedures. *See* Local Rule 7007-1(b) ("No discovery-related motion ... shall be heard unless counsel for the moving party first requests an informal conference with the Court...").

**Extension of Exclusivity**

Former section 1121(d) of the Bankruptcy Code, as applicable to this case, permits the court to extend a debtor's exclusive period upon a determination of cause:

> On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

*See* 11 U.S.C. § 1121(d)(2004). In determining whether a debtor has had an adequate opportunity to negotiate a plan of reorganization and solicit acceptances thereof, a court should consider a variety of factors, addressed below, to assess the totality of circumstances. *In re McLean Indus.*, Inc., 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987).

First, although the Debtors cases are not extremely large, the MTH claims and litigation claims add a unique complexity to the resolution of these cases. Second, the Debtors have made good faith progress towards reorganization. The Debtors have improved their business operations and have filed a Plan that proposes to pay all creditors in full with interest. The Debtors are current on all post-petition obligations and predict

they will maintain this ability to pay their bills as they come due. In addition the Debtors have reviewed and resolved many of the claims filed against them. However, the amounts of MTH's claims remain a significant unresolved contingency in the Debtor's cases requiring further time to confirm their Plan while those claims are liquidated and exit financing can be put into place.

**The Interest Claim and the Legal Fees Claim**

The Debtors also object to, and seek the disallowance and expungement of, the Interest Claim and the Legal Fees Claim. The Interest Claim calculates interest from the date of the MTH Judgment until the Petition Date. Because the MTH judgment has been vacated by the Sixth Circuit Decision, there is no longer a valid judgment on which interest could accrue, thereby rendering the Interest Claim void. The Legal Fees Claim seeks reimbursement of MTH's legal fees and expenses expended in connection with the Trade Secrets Litigation. MTH filed a Petition for Counsel Fees and Cost Reimbursement in the Michigan Court (the "Legal Fees Petition") on November 5, 2004; however, it has not been ruled upon because of the automatic stay extant in this case. The Legal Fees Petition asserts that under the Michigan Uniform Trade Secrets Act ("MUTSA"), attorney's fees can be awarded to the prevailing party in a litigation if willful and malicious misappropriation exists. Lionel argues that the Sixth Circuit Decision vacating the MTH Judgment leaves MTH ineligible to seek the reimbursement of incurred legal fees and expenses under the MUTSA and therefore, the Legal Fees Claim is also void. However, as MTH contends, the Legal Fees Claim stands on the same footing as MTH's Trade Secrets Damages Claim and may be resolved along with it. Accordingly, the objection to the Interest Claim is granted and the claim is expunged; the Legal Fees

13

Claim is also expunged without prejudice to reassert should fees be subsequently awarded.

**Conclusion**

The litigation in the Sixth Circuit has already consumed seven years and following the reversal by the Circuit Court, the litigation is now in a position that in the vernacular would be deemed, "a do over." As both sides have made clear their intention to appeal any adverse determination, anywhere, adding years of delay to the issue determination, this is clearly a situation contemplated by Congress for the implementation of section 502(c). Accordingly, the Motion to Estimate is granted with the hearing procedures suggested by the Movant to be reviewed in a conference to be scheduled with chambers. The Motion to lift the stay is denied. The Interest Claim and the Legal Fees Claims are expunged. The Motion to further extend exclusivity is granted.

IT IS SO ORDERED.

Dated: New York, New York
      August 3, 2007

                                       _/s/ Burton R. Lifland_____
                                       United States Bankruptcy Judge

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x

In re:                                  :        Chapter 11

LIONEL L.L.C., et al.,                  :        Case No. 04-17324 (BRL)
                                                 (Jointly Administered)
                     Debtors.           :

------------------------------------------------------- x

## STIPULATION AND ORDER MODIFYING
## AUTOMATIC STAY TO PERMIT POST-JUDGMENT
## MOTIONS AND APPEAL CONCERNING JUDGMENT
## OBTAINED BY MIKE'S TRAIN HOUSE, INC.

**WHEREAS,** on November 15, 2004 (the "Petition Date"), Lionel L.L.C., (the

"Debtor") filed with this Court a voluntary petition for relief under chapter 11 of title 11

of the United States Code (the "Bankruptcy Code"), and has since the Petition Date

remained in possession of its property and continued to manage its business as a debtor in

possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code; and

**WHEREAS,** prior to the Petition Date, on November 1, 2004, Mike's Train

House, Inc. ("MTH") obtained a permanent injunction (the "Injunction") against the

Debtor in the United States District Court for the Eastern District of Michigan (the

"District Court"), and on November 3, 2004, obtained a money judgment against the

Debtor in the amount of $38,608,305.00, plus interest at the legal rate from the date of

entry (the "Judgment") in the District Court; and

**WHEREAS,** prior to the Petition Date, MTH made a post-judgment petition for

attorneys' fees and cost reimbursement, which the District Court referred to a United

States Magistrate Judge for report and recommendation (the "Attorneys' Fees Petition");

and

WHEREAS, prior to the Petition Date, the Debtor made certain post-judgment motions in the District Court, which have not yet been determined; and

WHEREAS, the Debtor desires to seek relief from the Judgment and the Injunction from the District Court or, if necessary, from the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit"); and

WHEREAS, the Debtor has sought relief from the automatic stay so that the post-judgment proceedings (other than the Attorneys' Fees Petition) in the District Court may be concluded, and any necessary appeals to the Sixth Circuit may be taken and fully litigated;

NOW, THEREFORE, IT IS HEREBY STIPULATED, ORDERED AND AGREED, by and between the undersigned as follows:

1.      Upon the entry of this Stipulation and Order, the automatic stay shall be modified, pursuant to section 362(d), to permit the Debtor and MTH (a) to litigate fully any and all post-judgment motions and proceedings (other than the Attorneys' Fees Petition), in the District Court, (b) to the extent the Debtors deem it necessary or appropriate, to request a stay of the Injunction pending appeal from the District Court and/or the Sixth Circuit, and (c) to prosecute, defend and fully litigate any and all appeals from the Judgment or the Injunction, or any modification of the Judgment or the Injunction, to the Sixth Circuit; *provided, however*, that nothing in this Stipulation and Order shall modify or be deemed to modify the automatic stay to permit any action to enforce the Judgment or Injunction, or any modification of the Judgment or Injunction.

2.      The relief provided in this Stipulation and Order shall be limited to the specific relief described herein, and shall not constitute or be deemed to constitute

authority for either party to take any other or further actions absent further order of the Court. Except as otherwise specifically provided herein, the automatic stay, pursuant to section 362(a) of the Bankruptcy Code, shall remain in full force and effect.

3.     Except as expressly provided herein, the parties reserve all rights and claims against each other. In particular, and without in any way limiting any other rights and claims that are preserved, MTH expressly reserves the right to seek (a) additional relief from the automatic stay to permit the District Court to determine the Attorneys' Fee Petition, and (b) a declaration that the automatic stay does not apply to (or alternatively, additional relief from the automatic stay to permit) enforcement of the Injunction in the District Court; and the Debtor expressly reserves the right to oppose in whole or in part any such requests for relief by MTH.

4.     This Stipulation and Order represents the entire agreement of the parties with respect to its subject matter. No prior or contemporaneous agreement, oral or written, may used to alter or supplement the terms of this Stipulation and Order with respect to its subject matter.

5.     This Stipulation and Order may be modified only in a writing signed by the parties hereto, and any such modification shall only be effective upon approval by the Court.

6.     This Stipulation and Order is binding upon, and inures to the benefit of the parties, their successors and assigns, including without limitation, a trustee under chapter 11 or chapter 7 for the Debtor.

7.     This Stipulation and Order is subject to the approval of this Court. The parties agree to submit this Stipulation and Order for approval promptly upon its

NY1:1548794

execution.  In the event this Court refuses to approve this Stipulation and Order, this Stipulation and Order shall be null and void.

8.    The attorneys signing this Stipulation and Order represent that they have requisite authority to act on behalf of their clients.

9.    To the extent necessary, the stay provided in Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is dispensed with, and the relief from the

NY1:1548794

automatic stay granted upon the entry of this Stipulation and Order shall take effect

immediately.

Dated: New York, New York
      December 2, 2004

                                  STEVENS & LEE, P.C.
                                  Co-Counsel for Mike's Train House, Inc.
                                  111 North Sixth Street
                                  P.O. Box 679
                                  Reading, PA 19603-0679
                                  (610) 478-2000

                                        and

                                  SALOMON GREEN & OSTROW, P.C.
                                  Co-Counsel for Mike's Train House, Inc.

By:     /s/ Alec P. Ostrow
              Chester B. Salomon (CS-2319)
              Alec P. Ostrow (AO-3104)
              485 Madison Avenue
              New York, NY 10022
              (212) 319-8500

              O'MELVENY & MYERS LLP
              Proposed Counsel to Debtors and
              Debtors in Possession

By:     /s/ Adam C. Harris
              Adam C. Harris (AH- 4641)
              Robert E. Winter (REW-9937)
              Abbey W. Ehrlich (AE-8677)
              Times Square Tower
              7 Times Square
              New York, NY 10036
              (212) 326-2000

**SO ORDERED.**

Dated: New York, New York
      December ___, 2004

_____
  United States Bankruptcy Judge

5

EXHIBIT C

# U.S. COURT OF APPEALS
# JUDICIAL CASELOAD PROFILE
# PAGE 2

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | 2006 Numerical Standing |
|---|---|---|---|---|---|---|---|---|---|
| **SIXTH CIRCUIT** | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | |
| Number of Judgeships/Number of Panels | | | 16/5.3 | 16/5.3 | 16/5.3 | 16/5.3 | 16/5.3 | 16/5.3 | |
| Number of Sitting Senior Judges | | | 9 | 10 | 10 | 10 | 12 | 12 | |
| Number of Vacant Judgeship Months** | | | 21.0 | 40.5 | 48.0 | 65.3 | 91.0 | 60.9 | |
| ACTIONS PER PANEL* | Appeals Filed | Total | 966 | 977 | 908 | 931 | 866 | 910 | 7 |
| | | Prisoner | 256 | 250 | 242 | 283 | 289 | 284 | 7 |
| | | Other | 375 | 398 | 392 | 393 | 382 | 438 | 6 |
| | | Criminal | 246 | 247 | 195 | 176 | 155 | 152 | 7 |
| | | Administrative | 89 | 82 | 79 | 79 | 40 | 36 | 8 |
| | Appeals Terminated | Total | 970 | 981 | 873 | 854 | 915 | 880 | 9 |
| | | Consolidations & Cross Appeals | 45 | 54 | 32 | 29 | 30 | 29 | 7 |
| | | Procedural | 384 | 383 | 374 | 403 | 397 | 391 | 9 |
| | | On The Merits — Total | 541 | 544 | 467 | 422 | 488 | 460 | 8 |
| | | On The Merits — Prisoner | 88 | 88 | 87 | 94 | 104 | 107 | 3 |
| | | On The Merits — Other | 249 | 248 | 221 | 191 | 267 | 215 | 4 |
| | | On The Merits — Criminal | 149 | 142 | 119 | 116 | 106 | 124 | 7 |
| | | On The Merits — Administrative | 55 | 66 | 40 | 21 | 11 | 14 | 7 |
| | Pending Appeals | | 846 | 847 | 850 | 816 | 740 | 788 | 5 |
| Median Time | Median Time from Filing Notice of Appeal to Disposition | | 13.4 | 14.5 | 16.8 | 16.8 | 16.0 | 15.3 | 11 |
| Other Caseload Per Judgeship | Applications for Interlocutory Appeals | | 2 | 1 | 2 | 2 | 1 | 1 | 4 |
| | Petitions for Rehearing | | 59 | 58 | 55 | 42 | 58 | 56 | 4 |

# EXHIBIT D

## Table B-4B.
## U.S. Courts of Appeals—Median Time Intervals in Months For Merit Terminations of Bankruptcy Appeals, by Circuit, During the 12-Month Period Ending September 30, 2006

| Circuit | Total Cases | From Filing of Notice of Appeal to Filing Last Brief | | From Filing of Last Brief to Hearing or Submission | | From Hearing to Final Disposition | | From Submission to Final Disposition | | From Filing of Notice of Appeal to Final Disposition | | From Filing in Lower Court to Final Disposition in Appellate Court | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Cases | Interval | Cases | Interval | Cases | Interval | Cases | Interval | Cases | Interval | Cases | Interval |
| **BANKRUPTCY APPEALS** | | | | | | | | | | | | | |
| TOTAL | 423 | 343 | 5.0 | 343 | 5.3 | 235 | 2.0 | 188 | .8 | 423 | 13.0 | 423 | 22.8 |
| DISTRICT OF COLUMBIA | - | - | - | - | - | - | - | - | - | - | - | - | - |
| FIRST | 21 | 17 | 4.7 | 17 | 1.8 | 12 | 4.4 | 9 | 2.7 | 21 | 10.8 | 21 | 19.1 |
| SECOND | 40 | 31 | 5.0 | 31 | 2.7 | 32 | .4 | 8 | .5 | 40 | 9.4 | 40 | 24.7 |
| THIRD | 55 | 47 | 6.3 | 47 | 6.0 | 20 | 1.3 | 35 | 1.9 | 55 | 13.5 | 55 | 22.6 |
| FOURTH | 34 | 16 | 3.9 | 16 | 5.8 | 11 | 1.1 | 23 | .3 | 34 | 11.2 | 34 | 19.8 |
| FIFTH | 57 | 54 | 4.8 | 54 | 4.7 | 39 | 2.4 | 18 | 2.0 | 57 | 12.2 | 57 | 20.0 |
| SIXTH | 37 | 34 | 6.2 | 34 | 5.6 | 27 | 2.4 | 10 | 1.5 | 37 | 15.3 | 37 | 24.4 |
| SEVENTH | 24 | 19 | 3.4 | 19 | 3.1 | 16 | 2.8 | 8 | .5 | 24 | 10.1 | 24 | 20.0 |
| EIGHTH | 24 | 22 | 3.4 | 22 | 6.4 | 11 | 2.0 | 13 | .2 | 24 | 11.4 | 24 | 19.8 |
| NINTH | 83 | 65 | 5.5 | 65 | 13.8 | 51 | 1.3 | 32 | .3 | 83 | 21.8 | 83 | 30.3 |
| TENTH | 16 | 14 | 5.1 | 14 | 3.4 | 4 | 3.5 | 12 | .1 | 16 | 12.2 | 16 | 23.3 |
| ELEVENTH | 32 | 24 | 3.9 | 24 | 4.1 | 12 | 1.6 | 20 | .7 | 32 | 7.8 | 32 | 17.1 |

NOTE: THIS TABLE DOES NOT INCLUDE DATA FOR THE U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT.

127

# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MIKE'S TRAIN HOUSE, INC.,

                    Plaintiff,                          No.  00-71729

v.                                                      Hon. John Corbett O'Meara

LIONEL L.L.C., KOREA BRASS
CO., LTD., and YOO CHAN YANG,

                    Defendants.
_____/

## INJUNCTION AND ORDER DENYING
## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

This matter comes before the court on the July 21, 2004 motion for final injunction filed

by plaintiff Mike's Train House ("MTH").  Defendants filed responses August 11, 2004; and

Plaintiff filed a reply August 27, 2004.  Plaintiff subsequently filed a motion for temporary

restraining order and preliminary injunction September 2, 2004.  Defendant Lionel filed a

response September 23, 2004; and defendants Korea Brass and Yoo Chan Yang filed a response

September 27, 2004.  Plaintiff filed reply briefs October 4 and 6, 2004; and oral argument was

heard October 19, 2004.

In cases in which both legal and equitable issues are presented in a single case, the jury

should determine the issues common to both claims; and the jury's verdict operates as a finding

of fact binding on the trial court in its determination of the equitable claims.  Molton Co. v.

Eagle-Picher Indus., Inc., 55 F.3d 1171, 1175 (6th Cir. 1995).  This includes all determinations

both explicit and implicit in the jury verdict.  See Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993).

Following an 18-day trial in this case, the jury rendered a verdict after determining that Defendants had misappropriated trade secret design drawings for a number of trains which Defendants had manufactured and sold in the United States.  Consistent with the evidence presented at trial and the jury's verdict and award of damages, the court finds that Defendants misappropriated trade secrets for the following O gauge, zinc die cast engines:

1. Baby Hudson, Baby Pacific, Starter Set Hudson, Jr.

2. Scale C & O Allegheny

3. Scale Union Pacific Big Boy

4. Scale N & W Class A

5. Baby PRR K-4

6. Scale Lumber Shay

7. Scale PRR T-1

8. Scale Challenger

9. O Gauge Tinplate Hiawatha

10. Scale NYC Hudson

11. N & W Auxiliary Tender

12. UP Auxiliary Tender

13. Baby Challenger

14. Scale Dryfuss Hudson

15. Scale PRR S-2 Turbine

16.     Scale PRR K-4

17.     Baby 0-8-0

18.     Scale Empire State Express

19.     Baby Blue Comet

20.     Tinplate 392E

In addition, the court finds that Defendants misappropriated trade secrets regarding

MTH's speed ratio formula and lost wax castings.

Accordingly, it is hereby **ORDERED** that Defendants are **PERMANENTLY**

**ENJOINED** from:

(A) **USING** existing design drawings and/or existing tooling to manufacture the above

engines;

(B) **USING** existing design drawings or tooling for the above engines to manufacture any

other engine or engine part; and

(C) **USING** existing design drawings or molds for lost wax castings.

Defendants are not enjoined from re-manufacturing the above models of engines

provided that Defendants use independent means or legitimate reverse-engineering to determine

the dimensions, tolerances, and materials for the design drawings and tooling.  It is further

**ORDERED** that Defendants **RETAIN** all records of the independent means or reverse-

engineering used if they re-manufacture the above models.

It is further **ORDERED** that Defendants are **PERMANENTLY ENJOINED** from

**USING** the misappropriated speed ratio formula currently used in their trains in further

3

production of their trains.  Defendants may use another formula which they discover or invent, but they may not use Plaintiff's speed ratio formula.

It is further **ORDERED** that Plaintiff's September 2, 2004 motion for temporary restraining order and preliminary injunction is **DENIED** as moot.

<u>s/John Corbett O'Meara</u>
John Corbett O'Meara
United States District Judge

Date:  November 1, 2004

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| LIONEL L.L.C., et al., | : | Case No. 04-17324 (BRL) (Jointly Administered) |
| Debtors. | : |  |

------------------------------------------------------ x

|  |  |  |
|---|---|---|
| MIKE'S TRAIN HOUSE, INC., | : | 07 Civ. 7946 (RMB) (Bankruptcy Appeal) |
| Appellant, | : |  |
| -against- | : |  |
| LIONEL L.L.C. and LIONTECH COMPANY, Debtors and Debtors in Possession, and OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LIONEL L.L.C., | : | |
| Appellees. | : |  |

------------------------------------------------------x

## CERTIFICATE OF SERVICE

I, Robert J. LaRocca , certify that on the 20th day of September , 2007, I served a true

and correct copy of the within Brief For Appellant Mike's Train House, Inc. and Appendix via

federal express upon the below-listed individuals, addressed as follows:

36067_1

SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Attn: Adam C. Harris
     Abbey Walsh
     Adam L. Hirsch
adam.harris@srz.com
abbey.walsh@srz.com
adam.hirsh@srz.com

*Attorneys for Lionel LLC and Liontech
Company*

HALPERIN BATTAGLIA RAICHT, LLP
555 Madison Avenue, 9th Floor
New York, New York 10022
Attn: Alan D. Halperin
     Robert D. Raicht
     Carrie E. Mitchell
ahalperin@halperinlaw.net
rraicht@halperinlaw.net
cmitchell@halperinlaw.net

*Attorneys for The Official Committee of
Unsecured Creditors of Lionel L.L.C.*

Robert J. LaRocca